Keating, J.
These two appeals arise from the same set of facts.
In Brown the Westchester Reform Temple seeks affirmance of an order of the Appellate Division, Second Department (29 A D 2d 677) which unanimously held that a Zoning Ordinance of the Village of Scarsdale, as applied to the petitioner by the Planning Commission, bore no substantial relationship to the health, safety, welfare or morals of the community and violated the guarantees of religious freedom of the Federal and State Constitutions.
In Griffin the Westchester Reform Temple seeks reversal of an order of the Appellate Division, Second Department (29 A D *492 2d 672) which by a closely divided court held that the same Zoning Ordinance of the Village of Scarsdale is not unconstitutional oh its face.
The Westchester Reform Temple is a religious institution owning property at 255 Mamaroneck Road in the Village of Scarsdale. Mamaroneck Road is a heavily traveled residential street. The parcel in question consists of a large tract (6.7 acres) with a frontage of approximately 200 feet on Mamaroneck Road and a frontage of approximately 485 feet on Saxon Woods Road. It is described by the Scarsdale Planning Commission as “a long narrow parcel with an overall depth of approximately 1150 feet and a width ranging from 175 feet at the narrowest point to 325 feet at the widest point ’ ’.
The land is presently improved with a single-story synagogue facility consisting of a star-shaped sanctuary in. the front, three classrooms, an assembly room convertible into three additional classrooms, a kitchen, an office, a rabbi’s study and a downstairs basement lounge. At its highest point the existing building rises to just over 19 feet. It is set back from the building line on Mamaroneck Road approximately 133 feet and is approximately 44 feet from its south property line and 42 feet from its north property line.
It is an undisputed fact and the Planning Commission has so found that the present facilities must be expanded to meet the increasing needs of the congregation. In Brown our review is limited by the petition and the briefs to two points. First, the Temple’s plan provides for a setback of 62 feet from the building line on Mamaroneck Road while the Planning Commission insists that the setback be no less than 130 feet (5 times the height of the building as remodeled) and, second, the Temple plans to allow 29 feet to the adjoining lot on the north for a short distance while the Planning Commission insists that at least 40 feet be allowed to the adjoining side lot.
In all other respects, the Temple has been able to comply with the commission’s mandate, or a mutually satisfactory agreement has been reached. It insists, however, that the setback and side-yard restrictions are arbitrary and capricious, bear no substantial relationship to the health, safety and welfare of the community, constitute an unconstitutional abridgement of freedom of religion under the First and Fourteenth Amendments *493 to the United States Constitution as well as section 3 of article I of New York’s Constitution and impose an unnecessary $100,000 hardship on the Temple in the event that it cannot proceed in accordance with its plans.
We have already held that facilities for religious or educational uses are, by their very nature, ‘1 clearly in furtherance of the public morals and general welfare ” (Matter of Diocese of Rochester v. Planning Bd., 1 N Y 2d 508, 526; see, also, Matter of Community Synagogue v. Bates, 1 N Y 2d 445; Incorporated Vil. of Lloyd Harbor v. Town of Huntington, 4 N Y 2d 182, 191). And when the educational or religious needs of the community have grown, so that existing structures are inadequate, the same reasoning which we applied to the initial construction or use of the facilities must pertain to a proposed expansion or modification of the facilities. In each case the test is the same.
“ Zoning ordinances must find their justification in the police power exercised in the interest of the public. (Village of Euclid v. Ambler Realty Co., 272 U. S. 365, 387.) ‘ The governmental power to interfere by zoning regulations with the general rights of the land owner by restricting the character of his use, is not unlimited, and other questions aside, such restriction cannot be imposed if it does not bear a substantial relation to the public health, safety, morals, or general welfare.’ (Nectow v. City of Cambridge, 277 U. S. 183,188.) ” (Matter of Concordia Collegiate Inst. v. Miller, 301 N. Y. 189, 196.) To these general statements, we have added the specific observation that “ churches and schools occupy a different status from mere commercial enterprises and, when the church enters the picture, different considerations apply ” (Matter of Diocese of Rochester v. Planning Bd., supra, p. 523). Thus, in the Rochester case, we held a zoning ordinance unconstitutional in its application where the purported exclusion of a church was based upon the built-up character of a residential area, the adverse effect upon property values, the loss of potential tax revenue, the decreased enjoyment of neighboring property and the potential of trafile hazards. These considerations, which might clearly control in a case involving commercial structures, were held inadequate to preclude the construction of a church.
*494 The factual pattern in the present case is much the same. Hearings were held and evidence was received by the Planning Commission. The proof was conflicting. Proponents of the contemplated structure offered to show that the Temple would harmonize with the surrounding area, that property values would not be adversely affected and that the plans submitted afforded the most feasible means of meeting the expanded needs of the congregation. Opponents of the proposed modification submitted their proofs and affidavits to the contrary. The commission made its findings. It found, among other things:
‘ ‘ 13. that the proposed expansion toward the street line will impair the use, enjoyment and value of properties in the surrounding areas;
‘ ‘ 14. that the proposed expansion toward the street line will have an adverse effect on the prevailing character of the neighborhood and will deteriorate the appearance of the area ”.
We may concede, upon the conflicting testimony, that the conclusions reached by the Planning Commission regarding the effect of the Temple’s proposed expansion upon the use, enjoyment, value and character of the surrounding neighborhood find support in the record and cannot be disturbed. All of this, we have already held, is an insufficient basis upon which to preclude the construction of a church or synagogue. To sustain the Planning Commission’s decision, it must be convincingly shown that the Temple’s proposed expansion will have a direct and immediate adverse effect upon the health, safety or welfare of the community. This has not been done. The record is devoid of anything upon which to base a conclusion that the limitations imposed by the commission are related to the public health, safety or welfare. In such circumstances, we cannot help but conclude that the requirements are arbitrary and unrelated to the .substantial health, safety or welfare of the community and, therefore, cannot be sustained. Here, as in Matter of Diocese of Rochester v. Planning Bd. (1 N Y 2d 508, 526, supra), “under the facts presented by this record, the decisions of the planning board * * * bear no substantial relation to the promotion of the public health, safety, morals or general welfare of the community • they must *495 therefore be deemed arbitrary and unreasonable and should be annulled. ’ ’ (Emphasis in original.)
Accordingly, the order appealed from, which directs the Planning Commission to approve petitioner’s application and site plans, must be affirmed.
We turn then to the issue raised by the Griffin case. By its terms, the Zoning Ordinance of May 10, 1966 applies to all nonresidential buildings proposed for construction in a Residence A district.
Section 12-16-6 of the ordinance gives the Planning Commission power to determine, as to all such buildings, their height, the percentage of the plot to be covered, length and width, setbacks from front, rear and side lot lines and minimum number of parking spaces required. For example, there must be at least “ one parking space for one motor vehicle for each 5 seats which are so provided ” (§ 12-16-4, subd. [c]), no building shall exceed the maximum height allowed for residential buildings (§ 12-16-6, subd. [c], par [i]) and no building shall be set back less than the minimum setback required of residential buildings (§ 12-16-6, subd. [c], par. [iv]). These requirements, however, are flexible.
The specified requirements are to be imposed by the Planning Commission after considering, “ among other factors, the general character of the neighborhood, the size and location of buildings in the vicinity, extent and types of uses to be made of the proposed building or buildings and traffic conditions and parking facilities in the area”. These requirements, moreover, are to be consistent with the public health, safety and general welfare of the community “ and shall be designed, insofar as practicable, to avoid or minimize:
“ (i) creation of or seriously aggravating a traffic or other hazard,
“ (ii) any impairment of the use, enjoyment or value of properties in surrounding areas,
“ (iii) any incongruous or detrimental change in the prevailing character of the neighborhood, and
“ (iv) any deterioration of the appearance of the area.” (§ 12-16-6; emphasis added.)
*496 By subsequent amendment, dated October 11,1966, the Zoning Ordinance provides that, with regard to the expansion or enlargement of existing nonresidential facilities, the Planning Commission should also consider changes which led to the proposed expansion, anticipated future expansion, whether the expansion is for educational, religious or benevolent purposes, whether relocation would result in unnecessary hardship, alternatives to the proposed expansion and the size and shape of the lot and proposed nonresidential building. The Planning Commission is further directed “ to establish a reasonable balance between any unnecessary or unreasonable hardship to the users of the existing facilities found to exist after consideration of the factors set forth above, and a reasonable modification of the standards otherwise applicable to new non-residential buildings.”
We have said that religious structures cannot be excluded, directly or indirectly, from residential zones. We have said that factors such as potential traffic hazards, effects on property values and noise and decreased enjoyment of neighboring properties cannot justify the exclusion of such structures.
Religious structures enjoy a constitutionally protected status which severely curtails the permissible extent of governmental regulation in the name of the police powers, but the power of regulation has not been altogether obliterated. Those considerations which may wholly justify the exclusion of commercial structures from residential areas are inadequate to the task when religious structures are involved, but that is not to say that they cannot be considered for the purpose of minimizing, insofar as practicable, the impairment of surrounding areas or the danger of traffic hazards (Matter of Diocese of Rochester v. Planning Bd., supra). We have not said that considerations of the surrounding area and potential traffic hazards are unrelated to the public health, safety or welfare when religious structures are involved. We have simply said that they are outweighed by the constitutional prohibition against the abridgement of the free exercise of religion and by the public benefit and welfare which is itself an attribute of religious worship in a community. If the community can, consistent with this policy, both comply with the constitutional requirement and, at the *497 same time, avoid or minimize, insofar as practicable, traffic hazards or other potential detriments bearing a substantial relation to the health, safety and welfare of the community, there is no barrier to its doing so. Nevertheless, we have already decided in the Rochester case that, where an irreconcilable conflict exists between the right to erect a religious structure and the potential hazards of traffic or diminution in value, the latter must yield to the former.
The statutory scheme is clear. The ordinance applies to all nonresidential facilities. There is nothing objectionable in the language of the ordinance or the standards employed. The discretion vested in the Scarsdale Planning Commission by the Zoning Ordinance is not unrestricted. The governing board of the Village of Scarsdale has directed that the Planning Commission set requirements ‘ ‘ insofar as practicable, to avoid or minimize ” traffic hazards, impairment of the use, enjoyment or value of property in surrounding areas and deterioration of the appearance of the area. We conclude, therefore, that the ordinance is not unconstitutional per se.
What has occurred here is that the Planning Commission, under the guise of reasonable regulation, has unconstitutionally abridged religious freedom. While the grounds offered by the commission to sustain its determination might justify the imposition of conditions requiring a modest increase in expenditures, these reasons cannot sustain the heavy financial burden placed upon the Temple. To remedy the situation we may annul the unconstitutional application of the ordinance without destroying the ordinance itself. (Matter of Diocese of Rochester v. Planning Bd., 1 N Y 2d 508, supra.)
The orders of the Appellate Division in both cases should be affirmed, without costs.
Chief Judge Fuld and Judges Burke, Scileppi, Bergan, Breitel and Jasen concur.
In each case: Order affirmed.