Fuchsberg, J.
We are here confronted with the question of whether a village may by zoning ordinance establish fixed setback requirements applicable to religious institutional uses in an area zoned for residences. If such an invariable requirement is not permissible, then we must also decide whether, on the facts of this particular case, the setback requirement is sufficiently reasonable so that it may be applied to deny this plaintiff a variance. Finally, we are also required to decide whether the ordinances which set forth the bases upon which the requested special use permit is to be granted or denied are valid, since the village has indicated that, under these guidelines, it intends to deny the special use permit even if the setback variance is resolved in favor of the synagogue.
The plaintiff is a religious corporation with only approximately 125 family memberships (yielding approximately 300 to 350 individual members, including spouses and children). Organized about eight years before the institution of this litigation, it conducts religious services, maintains a youth program, provides education classes, and conducts various other religious and educational adult programs. During its first years of existence, it used the church buildings of other denominations for its services and programs. It is conceded that its membership is spread over a fairly wide area surrounding the Village of Roslyn Harbor, and that only 4% of *286 its family members actually live in the respondent village itself.
In 1970, plaintiff purchased two adjacent lots in the Village of Roslyn Harbor, together with the buildings thereon. These lots had been part of a large estate which was subdivided into some six or seven residential lots in 1954; four of these are now owned by residents who protest the location of the synagogue so near to their homes. The synagogue seeks to use the former estate house as its meeting place for services and programs and the former guest house as a residence for its Rabbi. The estate house is located some 29 feet from the property line; a zoning ordinance of the village requires that all religious uses located in residential areas be set back at least 100 feet. Although the village granted to its zoning board the power to consider, on various grounds, the suitability of a religious use in the planned location, the board is not given the authority to vary the 100-foot setback requirement.
Accordingly, when the synagogue applied for a special use permit and for the requisite variance, the variance was denied and, as a consequence, the permit was also denied. The board also indicated that, had not the denial of the variance settled the matter, it would have denied the special permit because of the synagogue’s potential effect on traffic and because there was insufficient water pressure in nearby fire hydrants.
The synagogue brought a proceeding under CPLR article 78 to compel the board to grant the requested variance. On appeal to this court, we held that the courts could not compel the board to grant that which it had no power to grant and suggested that a declaratory judgment action would be the appropriate form in which to test the question raised. (34 NY2d 827.) The present appeal is from that declaratory judgment action, the courts below having found that the ordinances in question are unconstitutional.
The judgment should be affirmed. In setting forth our reasons, we indicate, first, the framework within which the issues before us must be decided.
There have been three major cases involving zoning restrictions applied detrimentally to religious institutions in this State. In the first of these Matter of Community Synagogue v Bates (1 NY2d 445), we held, inter alia, that churches and other religious institutions are beneficial to the public welfare by their very nature and that, therefore, exercises of the police power directed toward determining whether such insti *287 tutions will harm the public if located in a particular residential area must begin with that assumption. In particular, we forbade localities to bar religious uses on the ground that they had not met a burden of proof that other suitable locations could not be found. While the decision was made in the context of review of an administrative determination under a particular ordinance, its language is not limited to the confines of that ordinance or to the procedural posture involved. The special status of religious institutions under the First Amendment freedom of religion is clearly the dominant factor.
In a companion case, Matter of Diocese of Rochester v Planning Bd. (1 NY2d 508), we reaffirmed those propositions. We added that the sort of considerations which may figure in a decision to grant or deny a special use permit to other entities, such as commercial ones, may not play the same role in decisions affecting religious uses. Specifically, we held that this was true regardless of whether property values will be affected adversely and whether the local tax base might suffer from the loss of revenue such religious uses entail. In the Rochester case, these reasons had been advanced by the town as sufficient to deny the special use permit; no effort to find some accommodation between the needs of the residents and those of the church had been attempted.
It has been forcefully argued to us in the case at bar that there is growing support for the view that churches ought to be subject to the same zoning considerations which are permitted to govern applications from other entities. We are aware that much of the support for the desirability of churches in residential areas descends to us from older case law: "The traditional concept of a small church serving the immediately neighboring community undoubtedly had something to do with the idea that such use was an integral part of community life in 'the best and most open localities.’ However the establishment of a modern church, not dependent upon local residents as its communicants, and in some instances attracting people from far distances, the inevitable use of the automobile in connection therewith and the increased activities’ of the church for social and community functions having only a remote connection with its primary function, all present a different picture.” (1 Rathkopf, Law of Zoning and Planning [3d ed], p 19-8.)
This description no doubt portrays accurately the problems *288 presented by religious uses in residential areas today. Nevertheless, it portrays but one half of the necessary equation. Religion and State, separate and coexisting, do make demands on one another, and the distinctions between the little church around the corner and the modern religious center must, no doubt, be acknowledged and accommodated. But the peculiarly pre-eminent status of religious institutions under the First Amendment provision for free exercise of religion remains an important factor entering into the balance that also weighs the needs or desires of the community.
Indeed the ground rules for such a balance were set forth in Matter of Westchester Reform Temple v Brown (22 NY2d 488). There, in discussing the problems involved in honoring the constitutionally protected rights of religious institutions while acknowledging the fact that they do bring traffic in their wake, do impinge on the quiet enjoyment of their immediate neighbors, and do affect the tax base of a town, we held (pp 496-497): "We have not said that considerations of the surrounding area and potential traffic hazards are unrelated to the public health, safety or welfare when religious structures are involved. We have simply said that they are outweighed by the constitutional prohibition against the abridgment of the free exercise of religion and by the public benefit and welfare which is itself an attribute of religious worship in a community. If the community can, consistent with this policy, both comply with the constitutional requirement and, at the same time, avoid or minimize, insofar as practicable, traffic hazards or other potential detriments bearing a substantial relation to the health, safety and welfare of the community, there is no barrier to its doing so. Nevertheless, we have already decided in the Rochester case that, where an irreconcilable conflict exists between the right to erect a religious structure and the potential hazards of traffic or diminution in value, the latter must yield to the former.”
Thus the question before us now is whether the ordinances of the Village of Roslyn Harbor contain guidelines which promote such a permissible kind of compromise or whether, either on their faces or as applied, they restrict religious uses without recognizing their special, protected status under the First Amendment. So phrased, the question is clearly the same one which must always be asked when the exercise of the police power conflicts with the exercise of a First Amendment right. (See People v Taub, 37 NY2d 530; Cantwell v *289 Connecticut, 310 US 296; Sherbert v Verner, 374 US 398; Wisconsin v Yoder, 406 US 205.)
Unlike the ordinances which we upheld in the Westchester case,[1] which required the authorities to consider the effects of a religious use upon residents and to set building size and lot restrictions to avoid or minimize ’’insofar as practicable” any detrimental effects (22 NY2d, 495), the special use ordinance before us directs authorities to deny the use permit if they find that the religious use will have any detrimental effect on public safety, health, or welfare, including effects on traffic, on fire safety, and on the character of the surrounding neighborhood. It contains no substantial requirement that efforts to accommodate or mitigate these effects be made. (See Anderson, New York Zoning Law and Practice [2d ed], §§ 9.29-9.34.)
The variance ordinance falls to the same analysis. While residents may apply for variances from setback requirements and the board may grant them, religious uses are subjected to an invariable requirement of 100 feet. We need not address the potential violation of equal protection which may be involved in such a differentiation; indeed there may be none, for it can be argued that churches and synagogues do present sufficiently different problems so that they may be treated separately from residences without offending that clause of the Constitution. (See 2 Anderson, American Law of Zoning, §§ 9.19-9.25.) Rather, the invariability of the ordinance offends against the requirement that efforts to accommodate religious uses be made. There could well be situations in which no detriment to any aspect of public safety or welfare would result from a setback of less than 100 feet.[2]
Nor is invariability the only evil in the ordinance. Its application to the synagogue in this case is not supported by sufficient evidence to justify it. While there is, in the record, only some indication that there may be traffic or noise-related *290 inconvenience to the synagogue’s immediate neighbors, or problems with fire protection, there is no hard evidence to that effect, nor that any effort was made to find ways to mitigate these inconveniences short of outright denial of the variance. While this no doubt stems from its intransigent nature, which denied the board power to modify it for any reason, that does not mean we must simply remit this case for further findings as to what setback, if any, is a reasonable one. As already indicated, the existing building which the synagogue wishes to use already sits, as it has for a long time, some 29 feet from the property line. Given this record, the question which the village must answer is not whether 29 feet is reasonable, but rather, what reasonable measures can be taken to mitigate the effect upon the neighbors of having a synagogue 29 feet from the property line.[3]
The record makes clear that the village’s objections to the location chosen by the synagogue are founded on no more than perceived inconveniences. The village’s own ordinances reflect a policy which labels acceptable a distance of 125 feet between a religious building and the nearest residence, since these ordinances permit a residence to be located 25 feet from its property line and would permit a church to be located 100 feet from its property line. The record discloses, that, in fact, the nearest house is 106 feet away from the synagogue building. Requiring the synagogue to observe the 100-foot setback in these circumstances would place it some 177 feet away from the nearest house or, put another way, the village’s determination to exclude the synagogue is based on a mere 19-foot discrepancy between reality and the village’s own statutory ideal. Since the cost to the synagogue of moving the building or constructing new facilities in its place is greater than it can afford, such a requirement would be tantamount to a denial of the use permit.
There remains the assertion made by the village that, since so few of its members live in the Village of Roslyn Harbor, the synagogue should be subject to a requirement that it demonstrate that there is no more suitable place for it elsewhere. We disposed of that contention in Matter of Community *291 Synagogue v Bates, 1 NY2d 445, (supra). As a variation on this theme, however, the village argues that if it, rather than the synagogue, can show the inappropriateness of location, then it may exclude a religious use, citing to our decision in Matter of Diocese of Rochester v Planning Bd. (1 NY2d 508, supra). We did indicate, in that case, that it might be possible for a town to exclude religious uses where all other exceptions to the residential character of the area are also excluded.[4] But we did not say this could be done for no better reason than that a number of the members of the church do not live in the town. As Mr. Justice Meade correctly noted in his decision below, the status of religious uses as protected under the First Amendment is the source of their desirability in the community; such First Amendment rights have never, to our knowledge, been limited to being exercised within the boundaries of one’s own place of residence. Moreover, as we noted in Community Synagogue, the power to decide where churches may not locate becomes the power to say where they may do so. That is impermissible.
In sum, to the extent that the ordinances of the Village of Roslyn Harbor authorize the denial of a special use permit for location of religious institutions in a residential district without setting reasonable requirements for adaptations which would mitigate their effects, the ordinances are unconstitutional. Accordingly, the order below must be affirmed in all respects.

. It has been argued here that the Westchester case ought not to apply to these facts because, in that case, the church already occupied property at the chosen location and its expansion was the subject of the dispute. But we said explicitly, in Westchester; that the considerations which apply to initial location and those which apply to planned expansions are identical. (22 NY2d 488, 493.)

. There is also involved here a request for a variance of the setback requirements to accommodate the location of the guest house which will be used to house the congregation’s Rabbi. While it presently meets residential requirements, under the village’s zoning ordinances, it becomes an accessory use to the main building and is thus required to have a larger setback. Our rulings with respect to the primary setback dispute apply with equal force to the guest house setback.

. We note that the original decision of the zoning board states that body’s recognition of the synagogue’s offer to meet any reasonablé requirement for modification or adaptation in order to bring the structures within existing requirements. The synagogue also consented to continuing jurisdiction of the'' board for as long as necessary in order to assure the board that all such requirements had been met.

. But see North Shore Unitarian Soc. v Village of Plandome (200 Misc 524); Pelham Jewish Center v Marsh (10 AD2d 645).