OPINION OF THE COURT
WlLMER J. PATLOW, J.
This article 78 petition was commenced by petitioner Covenant Community Church, Inc., to compel respondent Town of Gates Zoning Board of Appeals to issue a conditional use permit for the construction of a church, parochial school and day care center on petitioner’s land.
Petitioner, an inner-city church with about 200 members, has purchased approximately 11.44 acres of vacant land in the suburban Town of Gates. The property is zoned R-l-11.
Pursuant to section 49-72 of the Gates Code (the Town of Gates Zoning Ordinance of 1975), churches and their cus *538 tomary accessory uses are permitted in an R-l-11 district upon the issuance of a conditional use permit.
On January 26, 1981 petitioner duly applied for such conditional use permit and thereafter, on March 9, 1981, respondent conducted a public hearing on petitioner’s application.
Petitioner’s representatives, as well as its architect and real estate broker, appeared at the hearing. An architectural sketch of the proposed utilization of the premises and a floor plan of the church building were submitted at that time.
The meeting was attended by approximately 200 interested residents of the Town of Gates, one of whom presented a petition with the signatures of approximately 1,100 Gates homeowners opposing the application.
Respondent questioned petitioner’s representatives extensively and heard the comments of interested members of the community.
Subsequently at its April 13, 1981 meeting, respondent made certain factual findings in accordance with article XXXI of the Gates Code and proceeded to deny petitioner’s application.
On June 23, 1981, following the commencement of this article 78 proceeding, a group of residents in the vicinity of petitioner’s site were given permission to intervene as respondents.
Petitioner premises this article 78 proceeding on the grounds that respondent’s determination to deny its conditional use permit was arbitrary, capricious, an abuse of discretion and affected by errors of law. At oral argument before this court on July 20, 1981 petitioner’s attorney waived any question of substantial evidence within the meaning of CPLR 7803 (áubd 4).
At the outset, the court must address certain procedural issues raised by respondent and intervenors-respondents in opposition to petitioner’s constitutional arguments.
Petitioner raises constitutional arguments in paragraph 16 of its petition as follows: “16. Religious institutions have been accorded special protection from the full impact of *539 zoning restrictions. It has been held that the zoning power may not be used to deny the constitutional right to the free exercise of religion by the chilling application of zoning laws. The concept of religious use has been held to include the church, itself, a parish house, a parochial school, recreational facilities, and accessory parking. The decision of the respondent is affected by an-error of law, in that it has attempted to impose unreasonable and/or inappropriate restrictions, unrelated to public welfare, detrimental effect on surrounding property, and traffic hazards.”
Respondent Gates Zoning Board of Appeals argues that the above-quoted paragraph 16 of the petition does not state petitioner’s constitutional claims with sufficient specificity to raise any constitutional issues.
Intervenors-respondents argue that the Gates Zoning Board of Appeals had no authority to determine the constitutionality of the Gates zoning ordinance and was bound to comply with it. Intervenors-respondents therefore contend that the proper procedure for testing the constitutionality of this ordinance is a declaratory judgment action in which the Town Board of the Town of Gates, which enacted the ordinance, must be a party.
The New York State Court of Appeals has “consistently held that a proceeding under article 78 is not the proper vehicle to test the constitutionality of legislative enactments” (Matter of Kovarsky v Housing & Dev. Admin. of City of N.Y., 31 NY2d 184, 191). However, it has been established that “an article 78 proceeding is generally the proper vehicle to determine whether a statute, ordinance, or regulation has been applied in an unconstitutional manner” (31 NY2d 184, 191; see, also, Matter of Diocese of Rochester v Planning Bd. of Town of Brighton, 1 NY2d 508, 519-521).
In accordance with the above, this court determines that the instant article 78 proceeding is not the proper mechanism for testing the constitutionality of the Gates zoning ordinance per se. Nor will the court convert this proceeding into a declaratory judgment action under the authority of CPLR103 (subd [c]) inasmuch as the Town of Gates is not a party to this action.
*540 Thus, for purposes of this proceeding, the court deems the Gates zoning ordinance, upon which petitioner relies for the issuance of a permit, to be valid and constitutional on its face.
However, the court notes that petitioner has commenced a declaratory judgment action to litigate the constitutional issues not reached in the proceeding at bar.
In reaching the above determination, the court has considered Matter of Jewish Reconstructionist Synagogue of North Shore v Levitan (34 NY2d 827, mot for rearg den 35 NY2d 855) cited by respondent and intervenors-respondents. There, the New York Court of Appeals dismissed an article 78 petition without hearing the constitutional issues it raised because the respondent board of appeals, whose determination to deny the synagogue a special permit was being challenged, had no power to waive an explicit and invariable 100-foot side yard setback restriction laid down by the village board. However, that case is readily distinguishable from the matter at bar because here the granting of a conditional use permit was well within respondent’s discretion (see Gates Code, § 49-165).
Additionally, this court finds that paragraph 16 of the petition is sufficient to raise the issue of whether the Gates Zoning Code has been applied in an unconstitutional manner. That paragraph clearly alleges that respondent’s decision is affected by errors of law to the extent that it imposes unconstitutional restrictions upon petitioner. It does not allege that the ordinance itself is unconstitutional.
Having resolved the procedural issues, we now reach the question of whether respondent’s application of the Gates zoning ordinance to petitioner’s property, on the facts of this particular case, was so arbitrary and unreasonable as to violate petitioner’s constitutional rights and require the invalidation of respondent’s action.
In determining whether the Gates zoning ordinance has been applied to petitioner in'an unconstitutional manner, the following precedents must be considered.
It is established that, in general, “ ‘[zjoning ordinances must find their justification in the police power exercised in the interest of the public’” (Matter of Westchester Reform Temple v Brown, 22 NY2d 488, 493). The governmen *541 tal power to restrict the character of the landowner’s use “‘cannot be imposed if it does not bear a substantial relation to the public health, safety, morals, or general welfare’” (22 NY2d 488, 493).
However, it has been determined that “church and school and accessory uses are, in themselves, clearly in furtherance of the public morals and general welfare” (Matter of Diocese of Rochester v Planning Bd. of Town of Brighton, 1 NY2d 508, 526, supra).
Thus, “churches and schools occupy a different status from mere commercial enterprises and, when the church enters the picture, different considerations apply” (Matter of Diocese of Rochester v Planning Bd. of Town of Brighton, supra, p 523; accord Matter of Westchester Reform Temple v Brown, 22 NY2d 488, 493, supra, and Jewish Reconstructionist Synagogue of North Shore v Incorporated Vil. of Roslyn Harbor, 38 NY2d 283, 287, mot for rearg den 39 NY2d 743, mot to amend remittitur den 39 NY2d 744, cert den 426 US 950).
It has been stated that “a zoning ordinance may not wholly exclude a church or synagogue from any residential district” (emphasis in original; Matter of Diocese of Rochester v Planning Bd. of Town of Brighton, 1 NY2d 508, 522, supra) and that factors such as the built-up nature of a residential district, adverse effect upon property values, loss of potential tax revenue, decreased enjoyment of neighboring property and traffic hazards cannot justify such exclusion (1 NY2d 508, 523-525).
In order to sustain a zoning determination it must be “convincingly shown” that the proposed religious use “will have a direct and immediate adverse effect upon the health, safety or welfare of the community” (Matter of Westchester Reform Temple v Brown, 22 NY2d 488, 494, supra).
The underlying principles have been summarized as follows: “Those considerations which may wholly justify the exclusion of commercial structures from residential areas are inadequate to the task when religious structures are involved, but that is not to say that they cannot be considered for the purpose of minimizing, insofar as practi *542 cable, the impairment of surrounding areas or the danger of traffic hazards (Matter of Diocese of Rochester v Planning Bd., supra). We have not said that considerations of the surrounding area and potential traffic hazards are unrelated to the public health, safety or welfare when religious structures are involved. We have simply said that they are outweighed, by the constitutional prohibition against the abridgement of the free exercise of religion and by the public benefit and welfare which is itself an attribute of religious worship in a community” (Matter of Westchester Reform Temple v Brown, supra, p 496).
The same court continued (pp 496-497): “If the community can, consistent with this policy, both comply with the constitutional requirement and, at the same time, avoid or minimize, insofar as practicable, traffic hazards or other potential detriments bearing a substantial relation to the health, safety and welfare of the community, there is no barrier to its doing so. Nevertheless, we have already decided in the Rochester case that, where an irreconcilable conflict exists between the right to erect a religious structure and the potential hazards of traffic or diminution in value, the latter must yield to the former.”
The above-stated fundamental constitutional framework was most recently reconsidered by the New York State Court of Appeals in Jewish Reconstructionist Synagogue of North Shore v Incorporated Vil. of Roslyn Harbor (38 NY2d 283, mot for rearg den 39 NY2d 743, mot to amend.remittitur den 39 NY2d 744, cert den 426 US 950, supra). The high court was there cognizant of evidence that the community patterns upon which the earlier principles were based were in fact changing, in that the traditional small church serving the immediate neighborhood was evolving into the more modern church which tends to attract communicants from afar (38 NY2d 238, 287).
The court’s opinion was divided, with a plurality of three Judges reaffirming the special, protected status of religious uses under the First Amendment (Jewish Reconstructionist Synagogue of North Shore v Incorporated Vil. of Roslyn Harbor, supra, pp 286-291).
Two Judges concurred in a separate opinion, stating that (p 291) “the law should move in the direction of requiring *543 even religious institutions to accommodate to factors directly relevant to public health, safety, or welfare” and that they objected to the (p 292) “all but conclusive presumption that considerations of public health, safety and welfare are always outweighed, as some of the precedents suggest, by the policy favoring religious structures” (emphasis supplied). The Judges continued to recognize, however, that (p 292) “priorities, albeit limited, *** should be accorded to religious institutions”.
Following the Court of Appeals decision in Jewish Reconstructionist Synagogue of North Shore v Incorporated Vil. of Roslyn Harbor (supra), the Appellate Division, Second Department, addressed the same constitutional issues in Matter of American Friends of Soc. of St. Pius v Schwab (68 AD2d 646, mot for lv to app den 48 NY2d 611, app dsmd 48 NY2d 754). The Second Department, with one dissent, affirmed Special Term’s determination to annul respondents’ outright denial of petitioner’s application to construct a church and residence for priests. The appellate court also approved Special Term’s further determination to remit the matter to respondents with instructions to grant the application under (p 648) “‘such reasonable conditions as will permit establishment of petitioner’s church while mitigating the detrimental or adverse effects of such use upon the community.’” The majority (p 651) did not reach the issue of petitioner’s right to use its property for church purposes should it be impossible to fashion such reasonable conditions.
The majority opinion in Matter of American Friends of Soc. of St. Pius (supra, pp 648-650) relied upon Matter of Diocese of Rochester v Planning Bd. of Town of Brighton (1 NY2d 508, supra), Matter of Westchester Reform Temple v Brown (supra) and the plurality in Jewish Reconstructionist Synagogue of North Shore v Incorporated Vil. of Roslyn Harbor (supra) as the controlling case law and this court will do likewise.
It is instructive to repeat the following observations of the court majority in Matter of American Friends of Soc. of St. Pius (supra, p 649): “Human experience teaches us that public officials, when faced with pressure to bar church uses by those residing in a residential neighborhood, tend *544 to avoid any appearance of an antireligious stance and temper their decision by carefully couching their grounds for refusal to permit such use in terms of traffic dangers, fire hazards and noise and disturbance, rather than on such crasser grounds as lessening of property values or loss of open space or entry of strangers into the neighborhood or undue crowding of the area. Under such circumstances it is necessary to most carefully scrutinize the reasons advanced for a denial to insure that they are real and not merely pretexts used to preclude the exercise of constitutionally protected privileges.”
The merits of the petition at bar must now be examined in light of the above-stated principles.
Respondent made 10 factual findings, set forth in the minutes of the April 13,1981 meeting, upon which it based its conclusions and ultimate denial of petitioner’s application. Those findings, in summary form, are as follows: (1) That the immediate area surrounding petitioner’s site is a well-established residential area of single-family homes; (2) That the eventual establishment of petitioner’s church, with day care, school and recreational and accessory activities would create a substantial increase in traffic and noise on a constant basis; (3) That aesthetically the establishment of the church, its parking lot and accessory uses would diminish the use and enjoyment of the surrounding properties and change the character of the neighborhood; (4) That the plans submitted to respondent by petitioner show a variety of recreational uses, including a volleyball court and baseball and play fields, all within 15 feet of adjoining properties; (5) That as a consequence of the multiple recreational activities plus the other church and nonreligious activities planned for the site, the over-all result would be to infringe upon the peaceful and quiet enjoyment of the residents’ properties, because common sense indicates such activities by participants and observers would generate significant noise and disturbance; (6) That the intensity of the proposed use would radically change the character of the neighborhood and tend to diminish property values; (7) That respondent was aware of but would not consider the fact that approving petitioner’s application would result in additional expenses *545 for town services and automatic loss in tax revenues and the further fact that the petitioner had not yet obtained financing; (8) That respondent recognized but would not consider the fact that a significant number of churches already exist in the Town of Gates; (9) That the present location of petitioner’s church is outside the Town of Gates and therefore its congregation, currently 1,200 (sic) members with seating for 1,266 planned, would probably travel to the proposed site by bus and other vehicles, thus increasing the constant flow of traffic to the site; and (10) That there is a serious drainage problem on petitioner’s property such that development as planned would result in certain amounts of impervious material, which problem petitioner did not address and should have addressed and, if it had been considered, might have resulted in a significantly different proposal.
The factual findings of April 13, 1981 were preceded in the minutes by certain background information which, in most pertinent part, states that: “the Board was cognizant that the Church applicant has indicated on its architectural sketches numbered A-l, and A-2 provisions for construction of its facility in several stages * * * including the establishment of a church, day care center, tot lot, volleyball court, softball field, play field, future fountain, the blacktop parking for several hundred automobiles, plus the plan for the two (2) floors of the Church and attached structure, with provisions for approximately six (6) classrooms, library, work rooms, administration offices, etc. The Board is aware that such facilities provide for extensive non-religious activities (ex. Bingo, meeting halls for adult activities and lectures, a place for instructional programs and movies, a place for recreation, dinners, dances, as well as a host of other uses of a non-religious character.”
On the basis of all of the foregoing, respondent concluded that it could not find “that to grant the conditional use would: 1) Be in harmony with the general purpose, and intent of the Ordinance, or the residential area of its intended location. 2) Not be detrimental in any way to the residential zone of this site, or adjacent zones, taking into account the location and size of the use, and the nature and intensity of the operations involved in connection with it, *546 and the size of the site in respect to streets giving access thereto. 3) Not be detrimental to the health, safety, or general welfare of all persons residing or working in the location of the proposed use. 4) Not be detrimental or injurious to the residential property, and improvements, in the residential neighborhood, or to the general welfare of the Town” (emphasis in original).
Rather, respondent specifically concluded “that the proposed use intended by the applicant would: 1) Not be in harmony with the general purpose, and intent of the Ordinance, or the residential area of its intended location; and 2) That thé intended use would be detrimental to the residential zone of this site, and/or adjacent zones, taking into account the location, size of the use, the nature and intensity of the operations involved with it, and the size of the site in respect to streets giving access thereto. 3) That the intended use would be detrimental to the health, safety, or general welfare of all persons residing, travel-ling, or working in the vicinity or location of the proposed use, and further 4) That the intended use would be detrimental and injurious to the residential property, and improvements in the residential neighborhood, and to the general welfare of the Town” (emphasis in original).
These conclusions closely parallel the language of section 49-167 of the Gates Code!
Based upon the foregoing findings and conclusions, respondent denied petitioner’s application.
Upon oral argument of this petition, respondent admitted that the 10th factual finding, relating to drainage problems, was not a proper factor for it to consider in its deliberations. As revealed in the minutes of the March 9, 1981 public hearing, it is clear that the issue of drainage is to be considered by the Town of Gates Planning Board rather than respondent Town of Gates Zoning Board of Appeals.
Apart from the seventh and eighth factual findings, which set forth certain factors respondent chose not to consider, the remaining factual findings which formed the basis for respondent’s determination were, simply stated, increased traffic and noise, effect on use and enjoyment of *547 the neighboring properties, aesthetics, change in character of the neighborhood and diminished property values. These factors are clearly impermissible under the case law to justify outright denial of petitioner’s application (see Matter of Diocese of Rochester v Planning Bd. of Town of Brighton, 1 NY2d 508, 523, 525, supra; Matter of Westchester Reform Temple v Brown, 22 NY2d 488, 496, supra).
Significantly, in the second, third, fourth, fifth and sixth factual findings, these impermissible considerations are substantially based upon respondent’s objection to the anticipated use of the premises for a variety of nonreligious activities.
However, the case law is clear that “[s]trictly religious uses *** are more than prayer and sacrifice *** Churches have always developed social groups for adults and youth where the fellowship of the congregation is strengthened with the result that the parent church is strengthened * * * It is a religious activity for the church to provide a place for these social groups to meet, since the church by doing so is developing into a stronger and closer knit religious unit” (Matter of Community Synagogue v Bates, 1 NY2d 445, 453).
Thus, respondent’s findings are infirm to the extent that they fail to respect petitioner’s judicially recognized right to utilize its facilities and premises for such nonreligious activities as serve to support and strengthen its religious practice.
Finally, there appears to be a serious question as to whether the factors cited by respondent, which were improperly used for outright exclusion of petitioner, have a rational basis.
For instance, respondent clearly erred when it found the current size of petitioner’s congregation to be 1,200, inasmuch as the minutes of the March 9, 1981 public hearing indicate the membership is now only about 200.
Moreover, the references in respondent’s background material to the intended use of the premises for bingo and dancing are inaccurate. The only mention of bingo in the minutes of the March 9,1981 hearing is in the comments of a community member who spoke in opposition to petition *548 er’s application. Additionally those minutes contain no indication of any proposed use of the premises for dancing. Indeed, petitioner states that bingo and dancing are against its religious tenents.
Furthermore, petitioner insists that on or before the March 9, 1981 meeting it communicated to respondent an intention to abandon its plans for a volleyball court, softball field and play field. Respondent does not directly deny this allegation.
Thus, in the absence of clear support for respondent’s factual findings, respondent’s conclusions appear to be arbitrary and irrational, in addition to being affected by errors of constitutional law as already discussed.
The court has considered and rejected the following arguments raised by respondent and intervenors-respondents in opposition to the petition.
Intervenors-respondents argue that petitioner did not meet certain specific requirements of the ordinance pertaining to the height of the proposed building and spire, the number of parking spaces and the set-back distances from the neighboring properties.
The record is clear, however, that the application pending before respondent was for a conditional use permit only, and not for a variance. There is no indication in respondent’s factual findings or conclusions that its denial was based upon petitioner’s failure to obtain such variance prior to making application for a conditional use permit.
Intervenors-respondents also argue that the application is legally insufficient in that petitioner failed to comply with the New York State Environmental Quality Review Act (ECL art 8) which requires, at the least, the filing of an environmental assessment form.
However, the absence of compliance with the New York State Environmental Quality Review Act was not one of the bases for respondent’s denial of petitioner’s application and therefore is not now before this court.
Finally, respondent places great weight upon its argument that it denied petitioner’s application because it had no authority to grant a conditional use permit except in *549 compliance with the Gates zoning ordinance. Likewise, intervenors-respondents argue that respondent had no alternative but to deny the application because petitioner failed to meet the governing standards of the ordinance.
This reliance upon respondent’s formal compliance with the ordinance is misplaced. The above-described substantial defects in respondent’s determination to deny petitioner’s application cannot be cured merely by respondent having worded its conclusions so as to paraphrase the language of section 49-167 of the Gates Code.
Based upon all of the foregoing, this court concludes that respondent’s denial of petitioner’s application, without any attempt to accommodate the competing interests in this matter, was affected by errors of law as well as arbitrary, capricious and an abuse of discretion.
Therefore, the relief sought by petitioner is granted to the extent that respondent’s determination of April 13, 1981 is hereby annulled and the matter remanded to respondent with the direction that it grant petitioner’s application upon such reasonable conditions as will permit the construction of petitioner’s church while minimizing any adverse effects upon the neighboring properties and the community at large.