Mark Davies, Esq. Village Attorney, Tarrytown-on-Hudson
I am writing in response to your request for an Attorney General's opinion as to the authority of a village to prohibit a subdivision developer from extending streets within the subdivision past the village line.
The question raised in your letter relates to a piece of property that lies partially within the Village of Tarrytown and partially within the unincorporated portion of the Town of Greenburgh. You note that the owner of the property wishes to develop it by building approximately forty single-family homes on the Greenburgh portion and approximately twenty homes on the Tarrytown portion. The Greenburgh portion of the property does not front on any public street. The developer therefore wishes to provide access to the entire project through the Village of Tarrytown.
The village is apparently concerned about the increased flow of traffic, and your question is whether the village must allow access to the Greenburgh portion of the property. In the alternative, you have asked whether the village may condition subdivision approval on the developer laying out the streets in such a way so as to prevent access to the village from the Greenburgh section of the development. That is, the street(s) in the Village of Tarrytown would terminate at the village border and not allow access into the town.
A village's authority to regulate subdivision development derives from article 7 of the Village Law. Subdivision plats are approved by the village planning board (or village board where the village has not established a planning board) (Village Law, §§ 7-730,7-732). The planning board, inter alia, ensures that the land can be developed safely, that adequate roadways and parks have been provided and that the development conforms with the village's planning goals (ibid.). Furthermore, article 12-B of the General Municipal Law provides for county and regional planning agencies. The county and regional planning agencies have approval authority over subdivisions which form or are near the boundaries between municipalities (General Municipal Law, §§ 239-m, 239-n). The county and regional planning agencies consider the impact of developments beyond the boundaries of the particular municipality in which they are located in an attempt to coordinate regional development (ibid.).
Turning to the concerns of your letter, it is well established that traffic congestion is related to the public health, safety and welfare (Village Law, § 7-704; Matter of Overhill Bldg. Co. vDelany, 28 N.Y.2d 449, 457 [1971]; Matter of Westchester Reform Temple vBrown, 22 N.Y.2d 488, 496 [1968]), and can be considered by municipal officials in approving plans for development (Holmes v Planning Board,78 A.D.2d 1, 13 [2d Dept, 1980]). Indeed, the Village Law requires the planning board to take traffic patterns into account when approving subdivisions:
 "In approving such plats the planning board shall require that the streets be of sufficient width and suitable grade and shall be suitably located to accommodate the prospective traffic . . ." (Village Law, § 7-730[1]).
Thus, traffic flow is a legitimate concern and may be reasonably regulated in the subdivision approval process (Church v Town of Islip,8 N.Y.2d 254, 259 [1960]; Holmes v Planning Board, 78 A.D.2d 1, 15 [2d Dept, 1980]).
The reasonableness of particular conditions imposed by the planning board and their relation to legitimate public interest goals are essentially questions of fact, dependent to a large part on the entirety of the circumstances (Fred F. French Investing, Inc. v City of New York,39 N.Y.2d 587, 596 [1976]). Accordingly, the legitimacy of any particular condition is beyond the scope of this opinion.
Thus, while a village may regulate streets in a proposed subdivision, these regulations must be reasonable and rationally related to a legitimate zoning function. As noted, the village can impose conditions on subdivision development with the aim of regulating traffic. The village cannot, however, establish traffic or other conditions which are unreasonable and might in effect preclude development:
 "A zoning ordinance is unreasonable, under traditional police power and due process analysis, if it encroaches on the exercise of private property rights without substantial relation to a legitimate governmental purpose. A legitimate governmental purpose is, of course, one which furthers the public health, safety, morals or general welfare. (See, e.g., Salamar Bldrs. Corp. v Tuttle, 29 N.Y. 221, 224-225, supra; People v Scott, 26 N.Y.2d 286, 291; Nectow v Cambridge, 277 U.S. 183, 187-188, supra . . . " (Fred F. French Investing, Inc. v City of New York, 39 N.Y.2d 587, 596 [1976]).
Conditions imposed must promote the health, safety and general welfare of persons and property in the municipality (Village Law, § 7-700;McDonough v Apton, 48 A.D.2d 194 [4th Dept, 1975]). We note that because inter-municipal interests are at stake, regional or county planning board review is important here to assure that regional planning and zoning needs are met (see Berenson v Town of New Castle, 38 N.Y.2d 102, 110-111
[1975]).
In Westchester County, regional planning is coordinated by the Westchester County Planning Board. The procedures and grounds for review are set forth in the Westchester County Administrative Code (L 1961, ch 822).
A village may impose conditions on streets in a proposed subdivision as long as those conditions are reasonable and rationally related to legitimate zoning and planning functions.