**38** In the Matter of APOSTOLIC HOLINESS CHURCH, Respondent, v ZONING BOARD OF APPEALS OF THE TOWN OF BABYLON, Appellant. [633 NYS2d 321] —In a proceeding pursuant to CPLR article 78 to review a determination of the Zoning Board of Appeals of the Town of Babylon, dated July 29, 1993, which, after a hearing, denied the petitioner's application for area variances, the appeal is from a judgment of the Supreme Court, Suffolk County (Tanenbaum, J.), dated March 25, 1994, which granted the petition, annulled the determination, and directed the appellant "to issue the requested permit within 30 days of

service upon it of a copy of this [judgment] with notice of entry".

Ordered that the judgment is modified, on the law, by deleting the provision thereof which directed the appellant "to issue the requested permit within 30 days of service upon it of a copy of this [judgment] with notice of entry" and substituting therefor a provision directing the appellant to grant the petitioner's application upon such reasonable conditions as will permit the petitioner to hold religious services and perform related religious functions on the subject premises while mitigating the detrimental or adverse effects upon the surrounding community to the greatest extent possible; as so modified, the judgment is affirmed, without costs or disbursements, and the matter is remitted to the appellant for further proceedings consistent herewith; and it is further,

Ordered that the appellant shall issue the requested permit, subject to conditions, within 90 days after service upon it of a copy of this decision and order, with notice of entry.

The petitioner Apostolic Holiness Church (hereinafter the Church) owns two lots in the Town of Babylon, adjoining at the rear of each lot. One lot has a width of 60 feet at the front building line on Henry Street and the second lot has a width of 40 feet at the front building line on Olivia Street. The lots are in a "Residence C Zone", and are therefore subject to Town of Babylon Code § 213-94, which provides, in pertinent part, that "no building shall be erected on a lot having * * * a width of less than seventy-five (75) feet at the front building line". Pursuant to Town of Babylon Code § 213-286 (G), in order to construct a church building on the property, the Church would have to provide one parking space for every four permanent seats "or the equivalent floor area which is as may be made available for (4) temporary seats".

In or about 1991, the Church submitted a formal plan to the Zoning Board of Appeals of the Town of Babylon (hereinafter the Zoning Board) to construct a 1,843.33-square-foot Church on the smaller, 40-foot-wide parcel, with parking stalls on the larger 60-foot wide parcel. The plans provided for 80 permanent seats, with a meeting room in the basement which could accommodate an additional 65 people. Therefore, the Church needed, *inter alia,* a parking variance from the required 37 spaces to the eight spaces provided in the plans. The Church's application for area variances was denied. In denying the application, the Zoning Board noted that "[t]he difficulty is self-created in that the applicant took the property with knowledge of the zoning restrictions". The Zoning Board further noted

that "the proposed facility may be down-sized to a size viable upon the property, and such would substantially mitigate if not completely obviate the need for * * * variance relief".

The Church submitted new plans, placing the proposed building on the 60-foot wide lot, downsizing the proposed building to under 1,000 square feet with no basement, and 36 permanent seats, and using the 40-foot wide parcel solely for parking. The new plans provided for nine parking spaces, or one for every four permanent seats. The Church sought area variances "for permission to diminish front street line from 75' to 60' feet on Henry Street. To diminish front street line from 75' to 40' on Olivia Street". In the determination under review, the Zoning Board found that "the proposed construction would require parking variance relief * * * [because] the floor plans submitted clearly indicate vacant floor area in which temporary seats could be placed". The Zoning Board further noted: "[t]he reduction in front street line from 75' to 60' is also substantial and the reduction in the other front street line from 75' to 40' is even more so. In fact, requests to reduce front street line to 40' in 'C' residence districts, (as well as other residence districts) are routinely denied by this Board". It concluded that granting such a variance would create an appearance of "over development" with a "negative impact" on the community. The Zoning Board reiterated that the difficulty was self-created and noted that "[t]he claimed difficulty can be fully obviated by sale to an adjoining property owner, or the purchase of adjoining property".

In the judgment appealed from, that determination was annulled, on the grounds that "the proposed nine parking spaces provided for in the application fully comply with 'Town' requirements for church parking" and "[a] reduction in front street lines, although important, cannot justify denial of the 'CHURCH'S' application particularly where the Town Planning Board has approved the site plan for the structure".

In determining whether to grant an area variance the following factors must be considered: "(1) whether an undesirable change will be produced in the character of the neighborhood or a detriment to nearby properties will be created by the granting of the area variance; (2) whether the benefit sought by the applicant can be achieved by some method, feasible for the applicant to pursue, other than an area variance; (3) whether the requested area variance is substantial; (4) whether the proposed variance will have an adverse effect or impact on the physical or environmental conditions in the neighborhood or district; and (5) whether the alleged difficulty was self-

created, which consideration shall be relevant to the decision of the board of appeals, but shall not necessarily preclude the granting of the area variance" (Town Law § 267-b [3] [b]; *see, Sasso v Osgood*, 86 NY2d 374).

In this case, the Zoning Board made findings against the Church with respect to each of these factors, but that by no means ends our inquiry.

The law is well-settled that religious and educational institutions "enjoy special treatment with respect to residential zoning ordinances because these institutions presumptively serve the public's welfare and morals" *(Matter of Lawrence School Corp. v Lewis*, 174 AD2d 42, 46; *see, Cornell Univ. v Bognardi*, 68 NY2d 583; *Jewish Reconstructionist Synagogue v Incorporated Vil. of Roslyn Harbor*, 38 NY2d 283, cert denied 426 US 950; *Matter of Westchester Reform Temple v Brown*, 22 NY2d 488, 493; *Matter of Diocese of Rochester v Planning Bd.*, 1 NY2d 508; *Matter of Holy Spirit Assn. for Unification of World Christianity v Rosenfeld*, 91 AD2d 190, 197). The "total exclusion" of such institutions from an area zoned for residential use is improper *(Cornell Univ. v Bognardi, supra,* at 594; *see, Matter of Westchester Reform Temple v Brown*, 22 NY2d 488, 496-497, *supra; Matter of Diocese of Rochester v Planning Bd., supra).* Further, where a municipality imposes more stringent requirements upon a religious use than it would on a residential use, such requirements are viewed with suspicion *(see, Jewish Reconstructionist Synagogue v Incorporated Vil. of Roslyn Harbor, supra,* at 288). Whenever possible, a religious use should be accommodated by the imposition of conditions *(see, Matter of Westchester Reform Temple v Brown, supra,* at 497; *Matter of Harrison Orthodox Minyan v Town Bd.*, 159 AD2d 572; *Matter of Islamic Socy. v Foley*, 96 AD2d 536; *Matter of Mikveh of S. Shore Congregation v Granito*, 78 AD2d 855; *Matter of Seaford Jewish Ctr. v Board of Zoning Appeals*, 48 AD2d 686).

We find that the Zoning Board's concerns over parking are legitimate, since the proposed building could accommodate at least some temporary seats. However, those concerns can be adequately addressed with the imposition of conditions *(see, Matter of Genesis Assembly of God v Davies*, 208 AD2d 627; *Matter of Harrison Orthodox Minyan v Town Bd., supra; Matter of Islamic Socy. v Foley, supra).*

The Zoning Board's concerns over the fact that both lots are substandard in width are not as easily addressed. The Supreme Court, in annulling the determination denying the variances in the width of the front street lines, relied on the fact that the "Town Planning Board has approved the site plan". This anal-

ysis cannot withstand scrutiny, since "[t]he power to interpret the provisions of the local zoning law is vested exclusively in the Board of Zoning Appeals" *(Matter of Esposito Bldrs. v Coffman,* 183 AD2d 828, 829; *see, Matter of Gershowitz v Planning Bd.,* 52 NY2d 763; *Moriarty v Planning Bd.,* 119 AD2d 188; Town of Babylon Code § 213-12).

A religious institution does not enjoy a "conclusive presumption of an entitlement to an exemption from zoning ordinances" *(Cornell Univ. v Bognardi, supra,* at 594). The Zoning Board noted that area variances to build on 40-foot-wide lots "are routinely denied" in any residence district. Such a policy, uniformly applied to residential and nonresidential uses, is not on its face arbitrary and capricious.

In this case, however, the Church, following the suggestion of the Zoning Board, downsized their initial plans and moved the building to the 60-foot-wide lot, reserving the 40-foot-wide lot for parking only. The proposed building is under 1,000 square feet, smaller than a number of residences in the area. The Zoning Board noted that a reduction in front street line from 75 to 60 feet is "substantial", but did not indicate that there was a uniform policy against granting such variances.

Town of Babylon Code § 213-94 which provides for a minimum width of 75 feet at the front building line in a "C Residence District" permits construction of single-family dwellings on lots "held in single and separate ownership on July 25, 1954" if the lot width is not less than 60 feet wide at the front building line. The Church does not claim that this exception to the 75-foot width requirement applies to it, and cannot so claim, since its proposed building is not a "single-family dwelling". However, as previously noted, the imposition of more stringent requirements upon a religious use than would be imposed upon a residential use are viewed with suspicion *(see, Jewish Reconstructionist Synagogue v Incorporated Vil. of Roslyn Harbor,* 38 NY2d 283, 288, *supra).* It is evident here that construction of residential buildings on 60-foot-wide lots is permitted in a "C Residence District". Although a religious use brings more traffic and congestion than a residential use, "where an irreconcilable conflict exists between the right to erect a religious structure and the potential hazards of traffic or diminution in value, the latter must yield to the former" *(Matter of Westchester Reform Temple v Brown,* 22 NY2d 488, 497, *supra),* and, generally, problems of traffic and congestion can be adequately addressed with the imposition of conditions *(see, Cornell Univ. v Bognardi,* 68 NY2d 583, 596, supra).

Accordingly, the proposed construction can proceed, subject

to such reasonable conditions as the Zoning Board deems appropriate, including conditions relating to occupancy and parking. Thompson, J. P., Copertino, Hart and Goldstein, JJ., concur.