OPINION OF THE COURT
Phillip R. Rumsey, J.
In this CPLR article 78 proceeding, petitioner challenges respondent Planning Commission’s denial of its application for a special use permit to construct a parking lot across the street from petitioner’s church. The church, located on Vestal Avenue in the City of Binghamton, is presently served by approximately 40 parking spaces behind the church building. Due to increases in the size of the congregation, and the fact that the existing parking area, by virtue of its fairly steep slope, is somewhat difficult for elderly and disabled persons to utilize, petitioner would like to acquire some nearby land to use for additional parking.
One such parcel (located on the corner of Vestal Avenue and High Street) was recently offered for sale, and petitioner entered into a contract to purchase the property, contingent upon its obtaining the necessary approvals and permits from the controlling municipal authorities. Petitioner thereafter applied to respondent for a special use permit, allowing it to use the lot (on which presently stands a “rapidly deteriorating” two-family residence) in the desired manner. Upon review of petitioner’s application, the Planning Department issued a “Staff Report” dated January 5, 2000 (answer, verified Mar. 17, 2000, exhibit B), finding, inter alia, that “the general require *161 ments described in Section 805 [of the Zoning Ordinance] must be complied with,” and that the Planning Commission needed to determine whether those conditions, as well as those set forth in section 806 (11), had been satisfied. This report was furnished to petitioner’s counsel.
One week later, on January 12, 2000, the Planning Commission held a public hearing and meeting to consider petitioner’s application. At that time, petitioner’s counsel submitted to the Commission a memorandum (verified petition, Feb. 11, 2000, 1] 7) summarizing the legal principles governing the application of zoning laws to religious uses, and setting forth petitioner’s contention that the instant application for construction of “accessory parking” should be evaluated in the same manner as would a proposal to construct an actual church or other religious building (id., exhibit C).
After some discussion, petitioner’s counsel attempted to address the concerns raised by Commission members by citing cases relating to zoning requirements for religious uses of land, but these attempts were rebuffed by respondent’s counsel, who voiced his opinion that he could not necessarily agree with petitioner’s legal assessment, without having reviewed the cases himself; that they may have involved actual religious buildings, rather than a separate parking lot; and that it was not an appropriate time and place to argue “legalities.” He then guided the discussion back to consideration of the factors set forth at sections 805 and 806 (11) of the Zoning Ordinance, and the general “impact of a parking lot [on] the neighborhood.”
Respondent ultimately failed to approve the application by the requisite majority vote, resulting in its denial. This proceeding ensued.
Petitioner asserts that respondent acted arbitrarily and capriciously in failing to evaluate the application pursuant to section 806 (10) of the Zoning Ordinance, which governs applications for religious uses (specifically, for a “[cjhurch, chapel, temple, synagogue and related social, educational facilities, public building or facility including accessory uses in all residential districts” [verified petition, exhibit A (excerpts from Zoning. Ordinance)]); in failing to accord it the “special legal status” to which such uses are entitled; and in ignoring its own precedent in granting similar applications for off-street parking in residential neighborhoods to other entities, both religious and nonreligious. Respondent interposes several arguments in defense, including (1) that petitioner failed to preserve the is *162 sues now raised, by appealing from the Planning Department’s initial “classification” of the application as one for off-street parking (rather than for a religious use), as set forth in the “Staff Report” of January 5, 2000; (2) that petitioner “caused the hardship” of which it complains, by styling its application as one for a parking lot, not a religious use; (3) that section 806 (10) is applicable only to a religious facility per se (e.g., a church or synagogue), not to a related parking lot; (4) that the Commission had no discretion to waive the requirement that off-street parking in residential areas be for residential purposes only; and (5) that the subject determination was, in any event, based on a rational and reasonable interpretation of the Zoning Ordinance, and was therefore not arbitrary or capricious.
Respondent’s attempts to foreclose judicial review of the merits of its determination, on the grounds that petitioner failed to exhaust its administrative remedies, failed to preserve its arguments for review, or created the hardship of which it now complains, are unpersuasive. When petitioner’s application is read as a whole, it is apparent that the desired parking lot was intended to be used in conjunction with the existing church, for church purposes. There is nothing in the application that could possibly be viewed as the source of any reasonable misunderstanding as to the nature or purpose of the proposed use, or its relationship to the existing church.
Nor can petitioner be faulted for failing to appeal to the Commission from the Planning Department’s report of January 5, 2000. Even if the cited provision (section 906 of the Zoning Ordinance) applies to the report at issue (it is far from clear, on this record, that the report constituted a “decision” of the “division of planning” with respect to a “Series B site plan review,” bringing it within the scope of section 906), petitioner clearly voiced its disagreement with the Planning Department’s findings as to the proper factors to be considered by the Commission, in its written memorandum as well as orally at the hearing, and thus afforded respondent ample opportunity to consider the issue and rectify any mistake made by the Department. More is not required, particularly given the response of the Commission, which demonstrates that any further “appeal” to that body would have been futile.
Turning to the merits of the determination itself, the minutes of the January 12, 2000 meeting show that respondent’s members did not consider petitioner’s application in accordance with the proper standards for review of a proposal to es *163 tablish or expand a religious use. Such uses “enjoy a constitutionally protected status which severely curtails the permissible extent of governmental regulation in the name of the police powers” (Matter of Westchester Reform Temple v Brown, 22 NY2d 488, 496). As a result, a proposal for the establishment or expansion of a religious use — which encompasses not only buildings designed for worship, but also ancillary and accessory uses such as schools, playgrounds, related housing, and parking lots (see, Matter of Diocese of Rochester v Planning Bd., 1 NY2d 508, 525-526)—may be rejected, on zoning grounds, only if it is found that the proposed change “will have a direct and immediate adverse effect upon the health, safety or welfare of the community” (Matter of Westchester Reform Temple v Brown, supra, at 494). Moreover, “where an irreconcilable conflict exists between the right to erect a religious structure and the potential hazards of traffic or diminution in value, the latter must yield to the former” (id., at 497). Thus, while “[t]here is * * * no conclusive presumption that any religious or educational use automatically outweighs its ill effects” (Cornell Univ. v Bagnardi, 68 NY2d 583, 595), and an application may be denied where the proposed use will “actually detract from the public’s health, safety, welfare or morals” (id.), the municipality must make a diligent effort to accommodate the applicant, “while mitigating the adverse effects on the surrounding community to the greatest extent possible” (Matter of Genesis Assembly of God v Davies, 208 AD2d 627, 628), through the imposition of conditions or otherwise. Lastly, “where a municipality imposes more stringent requirements upon a religious use than it would on a residential use, such requirements are viewed with suspicion” (Matter of Apostolic Holiness Church v Zoning Bd. of Appeals, 220 AD2d 740, 743).
The remarks of respondent’s counsel, to the effect that, the general principles applicable to religious uses had no bearing on the subject application, because petitioner sought to construct a parking lot rather than an actual church building, essentially directed the Commission members to refrain from according the application the special status to which it was entitled. In reviewing a proposal to expand petitioner’s facilities, including this application to construct additional parking for the members of its congregation, respondent must be guided by the principles set out in the aforementioned cases. The presumptive value of religious facilities must be balanced against any actual detriment to the public health, safety or welfare, bearing in mind that typical hazards of traffic conges *164 tion, noise, diminution in property values, and the like, are generally insufficient to outweigh the public benefit of religious institutions and the constitutional protection to which such organizations are entitled (see, Matter of Westchester Reform Temple v Brown, supra, at 496).
Insofar as respondent contends that sections 805 (11) and 806 (11) of the Zoning Ordinance, taken together, categorically preclude the approval of any off-street parking lot that is to be used for other than residential purposes, such an interpretation — which has the manifest effect of excluding a religious use where an otherwise identical residential use would be permitted, without any provision for the balancing of interests that must dominate the evaluation of such a proposal — cannot withstand judicial scrutiny. In the court’s view, however, it is more likely that the reference, in section 805 (11), to “off-street parking regulations,” was intended to denote regulations establishing minimum amounts of off-street parking to be provided in conjunction with various uses (which provisions are not at issue here), and in any event, that section 806 (11), titled “Off-street parking as a principal use,” has no bearing upon the instant application, which seeks a permit for the construction of a parking area that is accessory to another land use, i.e., the church (as opposed to a stand-alone parking facility, with parking as its only — and thus principal — use). .
In sum, respondent has provided no justification for its failure to approach the instant application from a position of flexibility and accommodation, in an attempt to fashion a solution that will serve petitioner’s goals while having a minimally detrimental impact on the surrounding neighborhood. That plainly did not occur when the proposal was previously before the Commission, and the resulting determination must therefore be deemed arbitrary, capricious, and affected by an error of law. Accordingly, the petition must be granted, the determination annulled, and petitioner’s application remitted to the Commission for further proceedings not inconsistent with this decision.