Howard A. Zeller, J.
In this proceeding, brought pursuant to article 78 of the Civil Practice Act, the Diocese of Central New York of the Protestant Episcopal Church has petitioned this court for an order directing the issuance to it of a certificate of occupancy in accordance with an application made July 6, 1959 to the Zoning Ordinance Enforcement Officer of the Town of Cazenovia, New York. The respondents constitute the Zoning Board of Appeals of the Town of Cazenovia. This board confirmed the Zoning Ordinance Enforcement Officer’s denial of the Diocese’s application for a certificate of occupancy on the ground that the proposed use is not permitted under the applicable zoning restrictions. Byrne Realty Corporation, which is the largest single neighboring property owner, has been permitted to intervene.
The essential facts are not in dispute. The Diocese has entered into a contract for the purchase of land and buildings commonly known as “ Thornfield ”, which consists of 36.85 acres of land located upon both sides of West Lake Road in the Town of Cazenovia. Twenty acres of ‘1 Thornfield ” lie on the east of West Lake Road and this part of the estate runs to Cazenovia Lake where it has 716 feet of lake shore frontage. The remaining 16 acres lie on a steeply rising slope to the west of the highway and away from the lake. ‘1 Thornfield ’ ’ has been used as a family residence for years and presently is so occupied by two families. No external changes are proposed to be made by the Diocese to the buildings, which consist of a main residence house, a tenant house, a boathouse and a barn.
The Diocese proposes to use “Thornfield” as a religious education center and plans to conduct for adults and selected teenaged youths a series of programs of supervised religious study, seminars, contemplation and training with emphasis on Christian living and service. The proposed programs as outlined by the Diocese to the Zoning Board of Appeals would run from one day to a week in duration with participants numbering from 25 to 50. As stated by one representative of the Diocese at the public hearing on the application, ‘ ‘ The center and focus (of the program), as it always is in the Church, would be in the Chapel. People come to such meetings and schools for deepening of their relationship with God. * * * In order to build further upon this deepening relationship with God and understanding of Him in His ways, * * * in these conferences * * * the study of the Bible and instruction in Theology of the Christian Church and instruction in the Christian faith are (a) central and integral part of any program. * * * *517 Our lay people have shown an increasing concern for the ministry of the laity in the Church and we have found that * * * an intensive period of training is necessary.” An exhibit attached to the application of the Diocese for a certificate of occupancy states: “ A typical day’s program will commence with the celebration of Holy Communion at 7:30 in the morning and continue through breakfast at 8:15, lectures from 9:00 to 10:00, discussion groups from 10:30 to 12:30, lunch at 1:00, free time from 2:00 to 3:30, seminars from 3:30 until 5:30, supper at 6:00, and an evening program at 7:30. All courses and meetings will be planned and carried out by specially qualified clerical and lay leaders.”
The 1959 Zoning Ordinance of the Town of Cazenovia locates “ Thornfield” in a residential A use district. The provisions of the ordinance fixing the use restrictions applicable to ‘ ‘ Thorn-field ” are as follows (art. V, § 1):
“ The following uses and no other are permitted in A Residential Districts:
‘ ‘ A. Single family dwelling.
“ B. Accessory use and accessory building, provided such use or building does not include any activity commonly recognized as a business.
“ C. Church or similar place of worship, parish house, public school, parochial school * * *.
“ D. Office in the residence of a physician, dentist, lawyer, architect, accountant, engineer, insurance or real estate salesman or one engaged in a similar profession or business * * *.
‘ ‘ E. Rectory, Convent.
‘ ‘ F. Private garage.
“ G-. Private stable, * * *.
“ H. Farm.”
It is respondents’ position that the uses proposed by the Diocese fail to constitute permitted residential A zone uses as a ‘ ‘ church or similar place of worship, parish house * * * parochial school * * * rectory (or) convent.” The following excerpts from the Board of Appeals decision demonstrate its position clearly: ‘ ‘ though the Diocese proposes to carry on a religious activity at Thornfield, it has elected to do so by and through an instrumentality other than a church within the meaning of the town zoning ordinance, * * * the Diocese proposes to maintain a chapel upon the premises, but a chapel * * * is not a church or similar place of worship within the meaning of the zoning ordinance * * * (but) would simply serve as an adjunct to the Diocese conference *518 center. * * * (and) is not designed or intended to serve the religious needs of the residents of the Town. * * * (So that) the mere fact that the conference center possesses a chapel would not authorize the existence of the conference center in the residential zone. ’ ’ The use “for conference center purposes does not constitute a church or other similar place of worship use within the meaning of the Zoning Ordinance.”
The decision then goes on to say: “ The conference center would not qualify as a school use authorized in an A Residential Zone. * * * The school uses authorized and contemplated * * * are the usual public school and the usual parochial school * * * operated on the day basis # # *. The Zoning Ordinance does not contemplate the location of boarding schools or other types of educational institutions where the students remain in residence overnight.”
As to the applicability of “ Convent ” use in the ordinance to “ Thornfield ”, the decision of the board holds that it is “ clear that the quartering of laymen, including children, for brief sojourns at a conference center does not constitute * # * a convent * * * within the meaning * * * authorized”.
The decision further goes on to say: “ The transient character of the participants at the conference, their relatively short stay upon the premises and the activities contemplated * * * serve to distinguish and render inapplicable the rule which at times justifies the treatment of a group of unrelated persons as a single family unit. Moreover, * * * the use of * * * several buildings would render inapplicable the single family unit dwelling rule.”
The Diocese contends that all zoning ordinances, including the one here under attack, are drawn to control functions and activities and not merely to regulate the form that stone and mortar and wood should take. The Diocese does not seek a variance permit. It simply maintains that the contemplated use of “ Thornfield” is permitted by the ordinance which, as previously noted, sanctions a ‘1 Church or similar place of worship ”, “ parish house ”, “ parochial school ”, “ Rectory ” and “Convent”, The Diocese claims that the board’s action is based upon semantic distinctions which ignore substance and would limit a “ church or similar place of worship ” to being merely and exclusively a public house of prayer and sacrifice; would define a chapel as something less or inferior in function than an edifice more formally labeled “ church ”. The Diocese further claims that the board’s action arbitarily and unreasonably defines and restricts the definition of public and parochial *519 school to include only those institutions formally presenting an elementary or secondary curriculum and ignores the fact that the fundamental functions proposed for “ Thornfield” emphasize religious activities, training, study and contemplation, to which the short-term residence of the participants is a mere incident.
It appears to this court that the contemplated use of ‘ ‘ Thorn-field ’ ’ is primarily for religious contemplation, Christian worship, fellowship and education. Because it will not be exclusively a church, or a parochial school or a parish house or a convent, does not mean that its use is banned by the ordinance. The quoted portions of the ordinance ought to be considered and interpreted as a whole. Naked dictionary meaning of separate words should not be allowed to distort intent. Verbiage should convey — not dominate — meaning. The use proposed certainly comes within the true intent of the zoning ordinance, that is, to permit places of worship, schools, and to allow buildings for community living for the purpose of religious study, education, fellowship and contemplation. It cannot be denied that even under a strict and literal interpretation of the applicable ordinance, “ Thornfield ” could be used as an edifice for worship (a church), or as a place of instruction maintained by a religious body (a parochial school), or as a center for social life of members of a religious faith (a parish house), or as an abode for persons devoted to a particular religious life (a convent or monastery). The Diocese should not be denied the right to use “ Thornfield ” for these various purposes, even though the proposed programs do not exactly coincide with dictionary definitions of the uses enumerated by the zoning ordinance.
The highest court of this State has written that where the •efusal of a zoning board to permit a church and school in a class A residential district 1 ‘ bears no substantial relation to the health, safety, morals or general welfare of the community, such action is illegal ”. (Matter of Diocese of Rochester v. Planning Bd. Town of Brighton, 1 N Y 2d 508, 522.) There is absolutely nothing before this court to indicate that the contemplated use of “ Thornfield ” by the Diocese will adversely affect the health, safety, morals or general welfare of the Town of Cazenovia.
An order may be submitted directing the Zoning Board of Appeals of the Town of Cazenovia to issue the certificate requested by the Diocese.