■ In the Matter of NASSAU CHILDREN'S HOUSE, INC., Respondent, v BOARD OF ZONING APPEALS OF THE INCORPORATED VILLAGE OF MINEOLA, Appellant.—In a proceeding pursuant to CPLR article 78 to review a determination of the Board of Zoning Appeals of the Incorporated Village of Mineola, dated December 7, 1978, which denied petitioner's application for a declaration that its program constituted a permitted school use· and for an area variance, the appeal is from a judgment of the Supreme Court, Nassau County, dated May 21, 1979, which annulled the determination and directed the board to grant petitioner's application. Judgment reversed, on the law, without costs or disbursements, and proceeding dismissed, without prejudice to the institution of a declaratory judgment action. Nassau Children's House, Inc. (the shelter) is a not-for-profit corporation which maintains a children's shelter in the Village of Mineola in the R-2, One-Family Residential District, in which private and public schools are a permitted use. One of the two main structures at the premises houses 25 children ranging in age from 12 to 18; the other building is used for administrative purposes. The shelter funds its operations with the assistance of the Nassau County Department of Social Services, the State of New York, and by its own fund raising activities. In 1978 the shelter sought a permit from the Mineola building department to construct four attached buildings which would be utilized to house children residing at the premises. Under the proposal, a maximum of eight children and a supervising couple would be housed in each unit, thus increasing the number of children sheltered to 32 and creating a family atmosphere and permitting greater supervision than that currently available. The space presently utilized as bedrooms in one of the main buildings would be converted to classrooms. Under section 60-144.1 of the Mineola zoning ordinance, dormitory facilities are permitted as a special exception which may be granted by the board of zoning appeals (the board) provided the following conditions are met: "A. Where dormitory or sleep-in facilities are to be provided, there shall be a minimum area of at least two (2) acres for each fifty (50) or less number pupils. B. At least one (1) acre of said two (2) acres shall be provided and suitably designed and used solely for playground, play area or recreation area. C. One (1) off-street parking space shall be provided for each teacher or other member of any public, parochial or private school, university or rehabilitation center staff and one (1) additional space for each five (5) students. For auditoriums, gymnasiums, grandstands and other gathering places, one (1) off-street parking space shall be provided for each three (3) seats." The building inspector denied the permit on the ground that the premises constitute a nonconforming use and are not a school and that the property lacks the requisite two acres for each 50 pupils, the mandated recreation area, and the required off-street parking. The shelter then applied to the board for approval of the dormitory proposal pursuant to section 60-144.1 of the ordinance, area variances from the requirements of that section, and a determination that its operation was a

permitted school use. At the ensuing hearing, proof was adduced that there had been some educational curriculum at the facility at least as early as 1965 but that most of the attending children were educated in the Mineola public schools. However, in 1975, as part of an operational change, the decision had been made to educate all residents in-house. To accomplish that end, the shelter engaged five teachers who taught courses in basic English, science, mathematics, social studies, consumer education, physical education, and woodshop. Textbooks were borrowed from the Mineola school system, report cards were issued four times a year, and the grades given by the shelter's educational staff apparently were accepted by the public schools in Nassau County. The school calendar was two days longer than that of the Mineola public schools, and formal instruction was given 30 hours per week. However, the facility was not licensed by the State Department of Education, although an application for approval was pending at the time of the hearing. The board denied the application, finding that while the shelter was providing an educational program with well-qualified instructors, its primary purpose was that of a children's shelter and the educational function was merely incidental. The primary bases for this conclusion were the lack of education department accreditation, the failure of the 1975 amendments to the shelter's certificate of incorporation to include education as a corporate purpose, and, particularly, the fact the arrival and departure of children bore no relationship to the school calendar. In the board's view, the educational facilities fell "well below the standard necessary to constitute a school use within the meaning of the Code." Despite these dispositive conclusions, the board considered the effect on public health, morals, safety and general welfare of the proposed construction, as well as whether variances of section 60-144.1 requirements should be granted on the facts presented. As to the former, it was determined from the testimony that the shelter's children caused a great deal of disruption in the neighborhood, which in many cases deprived the residents of the peaceful enjoyment of their property, caused fear of physical and mental abuse, and resulted in property damage. The proposed increase in residents would therefore aggravate existing problems and detract from the general welfare of the community. The variances were denied because of the substantial noncompliance with area requirements and the shelter's failure to establish practical difficulty. In the CPLR article 78 proceeding which followed, Special Term agreed with the shelter's contentions and granted judgment annulling the board's denial and directing the issuance of a special use permit. The court decided not only that the shelter was a school within the meaning of the Mineola ordinance, but that in light of the preferred status of educational uses in zoning law, the board's denial of area variances and waiver of off-street parking was arbitrary and unreasonable because it unconstitutionally precluded the shelter from obtaining a special use permit. The matter was remitted to the board for the purpose of granting the original relief requested in its entirety. Although we agree that under the three-pronged test established in *Incorporated Vil. of Brookville v Paulgene Realty Corp.* (24 Misc 2d 790 [Gulotta, J.], affd 14 AD2d 575, affd 11 NY2d 672) the shelter is a school within the meaning of the Mineola zoning ordinance, and despite the fact that significant issues of constitutional proportion relative to immunity and zoning accommodation have been raised, we are constrained to reverse the judgment and dismiss the petition because the board lacked the power to issue the special use permit on the record before it. A special exception permit can be issued only upon fulfillment of the conditions mandated in the delegation of power contained in the zoning ordinance

*(Matter of Tandem Holding Corp. v Board of Zoning Appeals of Town of Hempstead,* 43 NY2d 801). Since the instant board thus had no power to waive or modify any of the specified conditions (see *Matter of Jewish Reconstructionist Synagogue of North Shore v Levitan,* 34 NY2d 827; *Matter of Sharf v Thaul,* 65 AD2d 819; *Matter of Schroeder v Kreuter,* 206 Misc 198, affd 284 App Div 972, affd 308 NY 993; see, also, *Matter of Texas Co. v Sinclair,* 279 App Div 803, affd 304 NY 817; *Matter of Plotinsky v Gardner,* 15 AD2d 563; *Matter of Board of Educ. v Wolf,* 10 AD2d 713), it could neither issue the requested special use permit nor alter the requirements of section 60-144.1 of the zoning ordinance in the guise of an area variance. Because dormitories are a permitted use in the R-2 Residential District if they comply with the conditions of section 60-144.1 (see *Matter of North Shore Steak House v Board of Appeals of Inc. Vil. of Thomaston,* 30 NY2d 238), they comprise a forbidden use if they do not conform to the standards fixed by that section. Therefore, the only type of variance which the board could have considered in connection with the shelter's application was a use variance. The board neither considered such a variance nor is there any record to support such a grant (see *Matter of Otto v Steinhilber,* 282 NY 71; see, also, *Matter of Forrest v Evershed,* 7 NY2d 256; *Matter of Crossroads Recreation v Broz,* 4 NY2d 39). The fact that the shelter is a school within the meaning of the zoning ordinance may have given it the right to apply for a special exception permit to establish dormitory facilities, but it did not clothe its operations with any immunity from compliance with the required standards for the approval of dormitories contained in section 60-144.1 of the zoning ordinance. Any immunity from those standards necessarily derives its origin from constitutional considerations which were beyond the power of the board of appeals to consider (see *Matter of Wesley Chapel v Van Den Hende,* 32 AD2d 565, mod on other grounds 25 NY2d 930; *Western Stone Prods. Corp. v Town Bd. of Town of Lockport,* 25 AD2d 493; *Matter of Cherry v Brumbaugh,* 255 App Div 880). Furthermore, we cannot ourselves reach the constitutional issues posited at Special Term and on this appeal. Without the presence of the corporate entity of the village or its legislative body in the proceeding and an opportunity for them to be heard, the constitutionality of the Mineola ordinance, the shelter's right to any degree of immunity from it, and matters relating to zoning accommodation cannot be decided (see *Matter of Overhill Bldg. Co. v Delany,* 28 NY2d 449). Accordingly, the petition must be dismissed without prejudice to the commencement of a declaratory judgment action at which the constitutional issues "will be ventilated" (see *Matter of Jewish Reconstructionist Synagogue of North Shore v Levitan, supra,* p 829). Lazer, J. P., Gibbons, Gulotta, Cohalan and O'Connor, JJ., concur.