**CITY OF RAPID CITY, a municipal corporation, Petitioner and Appellant,**

v.

**Richard S. KAHLER; Cornerstone Rescue Mission; David Adams; and Cheryl Adams, Defendants and Appellees.**

**No. 13943.**

Supreme Court of South Dakota.

Argued April 18, 1983.

Decided June 1, 1983.

Michael G. Diedrich City Atty., Rapid City, for petitioner and appellant.

Doyle Estes of Gunderson, Farrar, Aldrich, Warder & DeMersseman, Rapid City, for defendant and appellee Richard S. Kahler.

Todd Schweiger Black Hills Legal Services, Rapid City, for defendants and appellees Cornerstone Rescue Mission, David and Cheryl Adams; Mark Falk, Black Hills Legal Services, Rapid City, on brief.

DUNN, Justice.

This is an appeal from an order denying a petition for an injunction. The injunction was sought to enjoin the use of a facility which was alleged to violate a local zoning ordinance and create a public nuisance. We reverse and remand.

Richard S. Kahler owns a piece of real estate in Rapid City, South Dakota, which he has leased to a South Dakota nonprofit organization called the Cornerstone Rescue Mission. David and Cheryl Adams operate the mission and serve on its board of directors. These parties will collectively be referred to as the appellee in this case.

The mission is located in a portion of Rapid City which is zoned high-density residential by Ordinance No. 1074 of the City of Rapid City (appellant). The mission provides temporary room and board free of charge to those in need. The only requirement is that the guests must attend regularly scheduled worship services. The record indicates that occupancy averages fifteen to seventeen persons per night and that space is provided on a first come, first serve basis. Financial support for the mission's work is provided by individuals in the Rapid City community.

Guests who stay at the mission must follow certain rules. Those wishing to spend the evening must be in the mission by 10:30 p.m. each night. During the day, the mission is emptied from 9:00 a.m. to 11:00 a.m. for cleaning and from 1:30 p.m. to 6:00 p.m. for business needs. During these times the guests must fend for themselves and it is their activities during these periods of time which have resulted in numerous complaints to the authorities. The mission does not control or supervise its guests during these periods. As noted by the trial court, "[t]here is no question but what loitering, littering, panhandling and other unsavory activities have increased in the immediate neighborhood since the Mission opened its doors."

Appellant sought to enjoin appellee from using this facility in the manner described above. Appellant asserted the location of the mission violated existing zoning ordinances and also resulted in a nuisance which should be abated by an injunction. Both theories were rejected by the trial court.

Appellant's original action seeking injunctive relief alleged the mission was not a permissible use in the district in which it was located. Appellee answered by asserting it was legally operating within appellant's zoning ordinance since it was operat-

ing a boardinghouse as defined in the ordinance. The pleadings, the trial and the briefs to the trial court were limited to whether the mission came within the boardinghouse exception to the zoning ordinance. The trial court's memorandum opinion rejected the boardinghouse exception defense but found for appellee by concluding the mission was a religious use. The trial court subsequently entered findings of fact and conclusions of law to that effect. The trial court did not allow counsel for either side to present evidence, legal arguments or briefs on the issue of religious use.

■ The trial court's conclusion that the mission constitutes a religious use must be supported by findings of fact. *Hartpence v. Youth Forestry Camp,* 325 N.W.2d 292 (S.D.1982). Our review of the record leaves us with the firm conviction that the trial court made its decision based on insufficient evidence. We are, for example, unable to determine whether the mission is directly affiliated or supported by an organized religion, whether the religious leaders referred to are actually ordained ministers of recognized denominations, and we cannot determine from the record the nature, frequency and content of religious services said to be held in the mission. Accordingly, we remand this case to the trial court for further findings. On remand, we believe the trial court should consider the following overview of the law in the religious use area in making its decision.

■ The First Amendment forbids the enactment of any law "respecting an establishment of religion, or prohibiting the free exercise thereof.". This language is also applicable to the several states by virtue of the Fourteenth Amendment. *Cantwell v. Connecticut,* 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940). Together, these provisions require a separation of church and state, and guarantee religious freedom.

■ Municipal regulation of land use is capable of offending the principle of governmental neutrality. As one commentator noted, however, "[c]hurches, synagogues, and other institutions dedicated to religious objectives are in some degree protected from the full impact of zoning restrictions. These uses are favored for reasons ranging from their unique contribution to the public welfare to constitutional guarantees of freedom of worship." 2 R. Anderson, American Law of Zoning, § 12.18 (2nd ed. 1976).

■ What is "religious," however, is not easily defined. For free exercise purposes, "religion" cannot be neatly packaged by simply limiting its application to organized religious activities associated with mainstream religious organizations. Rather, as one commentator recently noted:

> In an area as subjective as one's religion, the Court obviously cannot rely on fixed guidelines. Each case will have to be determined individually. A court should be careful not to allow political or pragmatic beliefs to pass for religion. If the court does decide that the activity for which first amendment protection is claimed arises out of a religious belief, it must also determine whether the belief is held in good faith, and not being used as a subterfuge to protect otherwise prohibited conduct. Good faith might be indicated by such factors as organization, period of time the religious group has been in existence, whether there is some visible form of worship, and whether there is a serious threat to public health, safety, or welfare.

Comment, 76 Nw.U.L.Rev. 786, 809 (1981) (footnotes omitted).

Religious use, moreover, is not defined solely in terms of religious worship. Case law on point reveals that activity related to the purpose of a religious organization has been construed to be a religious use. This includes the church itself, a parochial school with areas for recreational and extracurricular activity, *City of Concord v. New Testament Baptist Church,* 118 N.H. 56, 382 A.2d 377 (1978), a convent, *Board of Zoning Appeals v. Wheaton,* 118 Ind.App. 38, 76 N.E.2d 597 (1948), a student dormitory, *Schueller v. Board of Adjustment of City of Dubuque,* 250 Iowa 706, 95 N.W.2d 731 (1959), an orphanage, *University Heights v.*

*Cleveland Jewish Orphan's Home,* 20 F.2d 743 (6th Cir.1927) *cert. den.* 275 U.S. 569, 48 S.Ct. 141, 72 L.Ed. 431 (1927), a center for counseling drug users, *Slevin v. Long Island Jewish Medical Center,* 66 Misc.2d 312, 319 N.Y.S.2d 937 (1971), and a chapel, *Diocese of Central New York v. Schwarzer,* 23 Misc.2d 515, 199 N.Y.S.2d 939 (1960) *aff'd* 13 App.Div.2d 863, 217 N.Y.S.2d 567 (1961).

The scope of religious use is not unlimited, however. Classification of religious use has been denied to the operation of day classes to school children at a location several blocks from the church, *Heard v. Dallas,* 456 S.W.2d 440 (Tex.Civ.App.1970) (RNRE), to a church which was to be used as a healing center, *Coe v. City of Dallas,* 266 S.W.2d 181 (Tex.Civ.App.1953), and to a church which wanted to construct a ritualarium or mikvah in a highly restricted residential district which permitted churches, *Sexton v. Bates,* 17 N.J.Super. 246, 85 A.2d 833 (1951) *aff'd* 21 N.J.Super 329, 91 A.2d 162 (1952).

■ Thus, while we acknowledge that religious conduct should be given a wide latitude of expression, we believe the community also has an interest to protect in these situations. The public is entitled to preservation of its health and safety. In addition to revenue lost because of their nontaxable nature, churches and other religious uses can generate traffic and parking problems, noise, litter and related problems. Thus, it is apparent that religious uses are not totally beyond the reach of municipal zoning power.

■ Should the trial court determine that the mission is not a religious use as described above, it must again consider whether the zoning ordinance excludes missions from being established within the city limits of Rapid City. On remand, the trial court should consider whether this issue has been rendered moot.

In *State ex rel. Johnson v. Mathis Implement,* 325 N.W.2d 58, 59 (S.D.1982) (citations omitted), we stated:

> "[A]n appeal will be dismissed as moot where, before the appellate decision, there has been a change of circumstances or the occurrence of an event by which the actual controversy ceases and it becomes impossible for the appellate court to grant effectual relief." .

Since this litigation began, the zoning ordinance has been amended to specifically provide for the placement of missions within general commercial districts. The amendment also sets forth procedures to be followed in applying for authorization to organize a mission. What may have been an ambiguity in the past may now be explicit and thus avoid the constitutional problem addressed below.

Since we are remanding this case for further finding by the trial court, we do not reach the other issues raised by the parties. Accordingly, the order of the trial court is reversed and remanded.

All the Justices concur.