*704 OPINION OF THE COURT
David O. Boehm, J.
In this CPLR article 78 proceeding petitioner, Bright Horizon House, Incorporated, challenges the determination of the respondent, Zoning Board of Appeals of the Town of Henrietta (Board), that the use proposed by petitioner is not a permitted use under the applicable zoning ordinance and in further denying petitioner’s application for a use variance.
Petitioner is a not-for-profit corporation organized for the purpose of establishing and maintaining a Christian Science accredited care facility in the Rochester area. In furtherance of this objective, the petitioner in 1977 purchased an 11-acre parcel in the Town of Henrietta for $85,000 from the Mother Church and First Church of Christ Scientist in Boston, Massachusetts. Presently, the property is tax exempt under section 420-a of the Real Property Tax Law.[1]
In March, 1983, petitioner applied to the Board for permission to construct the facility, consisting of 32 living units, at the corner of Castle Road and Winton Road in the Town of Henrietta. The parcel is located in an R-l-15 district.
Article V (§ 127-6A [6]) of the town code sets forth the permitted uses in an R-l-15 district: “Churches, schools and institutions of higher education, public hospitals, public libraries and municipal and special district buildings, provided that no such buildings shall be located within fifty (50) feet of any adjoining lot line”.
The proposed care facility would have 32 fee-paying residents occupying separate rooms. It would be staffed by accredited Christian Science nurses and practitioners. These would not provide medical nursing or physician’s care in the usual sense and are given special exemption from licensing under sections 6527 (subd 4, par b) and 6908 (subd 1, par g) of the Education Law (see People v Cole, 219 NY 98). Accreditation for the facility comes directly from *705 the Mother Church, the First Church of Christ Scientist in Boston, Massachusetts.
According to the accreditation standards, which the petitioner provided, the operation of the facility must be supportive of Christian Science healing and nursing practices established pursuant to the church manual.
As noted by petitioner in its memorandum of law, the Christian Science Church was founded in the late 1800’s by Mary Baker Eddy. Although based upon Protestant Christianity, it is characterized by the belief that “A sick body is evolved from sick thoughts” (citing Eddy, Science and Health 260:20). Christian Science eschews traditional medical care, relying instead on the power of faith in Christian Science beliefs and practices to cure physical illness.
In order to be admitted to the facility, a patient would be obliged to acknowledge that he or she will rely exclusively on Christian Science for healing and recognize that traditional medical services or treatment of any kind are not available. Ordinarily, individuals who have sought medical diagnosis or treatment are not accepted until after two months from such treatment.
At the hearing of March 23, 1983, Elizabeth Heintz, a member of petitioner’s board, when questioned by members of the zoning board stated the purpose of the facility as follows:
Heintz: Christian Science is based on the teachings of Christ Jesus and healing. And so we require people who are educated in healing to help our people and so Christian Science nurses are basically nurses who care for people who have certain illnesses. We do not dispense drugs, and we do not go with many of the prescribed methods of medical healing, but we do require trained nurses to help our people.
Spero: Well, what would they be doing? This is what I’m saying. Are they simply there for the purpose of training new people?
Heintz: Well, if I could give you an example, for instance if we had a Christian Scientist who had a claim of a broken hip and was brought to our facility. Obviously, a person with a broken hip needs help in getting about, needs help in food preparation, in bathing, general care that is needed when they cannot care for themselves.
Spero: Well then, in that respect, it is a health care facility.
*706 Heintz: Health, no. No, that’s not in our vocabulary. It is really and truly a house of prayer and healing.”
Further on in the hearing Elizabeth Heintz was asked if this wouldn’t be a facility that catered to elderly people. She responded: “I would say to be perfectly honest with you it’s generally the elderly that begin to need, but also I should tell you that we have what is known as rest and study and we have any number of younger people who come to study Mrs. Eddy’s works and the bible and they may be there for a weekend or even for a week. We have, say for instance, young housewives who sort of maybe need to get away from five kids and three feet fences and what have you, and will come in for rest and study. So you could have a huge variance. But again, to be perfectly honest with you, I would say those that are in need of care would tend to be along in years.”
The Board, on May 25, 1983, concluded that the care facility constituted “neither a church, a public hospital, or conventional health care facility” and that neither economic hardship nor hardship caused by any uniqueness of the land had been established so as to warrant the granting of a variance.
The petitioner challenges the validity of the Board’s decision on three grounds, the first being that the Board’s finding that the proposed use was not permitted under the zoning ordinance was improper. Specifically, petitioner alleges that the Board incorrectly construed the definition of church and house of prayer and, in so doing, denied petitioner’s request for an interpretation of the ordinance which would have permitted the facility in the R-l residential district.
It is a well-settled rule that a court may not substitute its judgment for that of the board or body it reviews unless the decision under review is arbitrary and unreasonable and constitutes an abuse of discretion (Matter of Diocese of Rochester v Planning Bd., 1 NY2d 508, 520).
The zoning ordinance does not define the term “church”, and this court, therefore, is obliged to define the term in light of its ordinary and accepted meaning (McKinney’s Cons Laws of NY, Book 1, Statutes, § 94).
*707 In Matter of Community Synagogue v Bates (1 NY2d 445, 453), the Court of Appeals articulated a broad definition of church: “A church is more than merely an edifice affording people the opportunity to worship God. Strictly religious uses and activities are more than prayer and sacrifice and all churches recognize that the area of their responsibility is broader than leading the congregation in prayer. Churches have always developed social groups for adults and youth where the fellowship of the congregation is strengthened * * * To limit a church to being merely a house of prayer and sacrifice would, in a large degree, be depriving the church of the opportunity of enlarging, perpetuating and strengthening itself and the congregation”. That definition, however, is not entirely applicable here because it was formulated in the context of uses accessory or ancillary to the principal use of a structure as a place of worship (see Diocese of Buffalo v Buczkowski, 112 Misc 2d 336, 342-343, affd on other grounds 90 AD2d 994; cf. Order Minor Conventuals v Lee, 64 AD2d 227, 231). The town code defines an accessory use or structure as one “customarily incidental and subordinate to the principal use or building and located on the same lot with such principal use or building” (§ 127-2B; emphasis added). In this case, not only is the subject property physically separated from the local Christian Science Church, which is located across the street, but also the petitioner is a separate organization in no way affiliated with the church or its activities.
The difficult question of whether a particular land use constitutes a “church” has constantly troubled the courts because important constitutional rights are embedded within the definition. The conclusions have not always been consistent as different courts have given the term varying constructions (see Ann., 62 ALR3d 197).
Here, the facts support the Board’s conclusion that the proposed facility does not constitute a church. Its purpose is not “public worship”, an activity typically associated with a church (see Webster’s New International Dictionary [3d ed]). Rather, as the petitioner’s by-laws state, it is a nursing facility intended “to provide skilled nursing care, comfort, support and maintenance for those seeking healing through Christian Science.” Unlike a conventional church, this facility is, as the Board found, *708 residential in nature, providing room and board to fee-paying individuals for a period of up to six months, much longer than typically would be associated with church attendance. Additionally, there does not appear to be a common area or sanctuary set aside for worship, as is the case with a house of worship. It is particularly significant that the petitioner’s representatives themselves do not consider this facility to be a church according to the tenets of their own religion. Not only do they acknowledge that a Christian Science Church is located across the street, but they also liken in a broad sense their facility to a retreat house used by other religions rather than to a church. It does not seem, therefore, that the Board’s interpretation of church under the zoning ordinance was either arbitrary or unreasonable.
Although the proposed facility may be a “house of prayer and healing”, in a zoning sense it would appear to be neither. It does not take on a religious use simply because its residents pray and contemplate as part of the process of healing, any more than a hospital incorporated and operated by a religious order, which has set aside a separate area of the hospital as a chapel for prayer and spiritual strength, would thereby become a church or religious institution, as those terms are commonly defined.
Nor is it a “public hospital” with all of the manifold purposes and services such an institution provides. The facility proposed by petitioner would not perform conventional medical treatment or surgery. It would not deal with life-threatening situations. Fractures requiring mechanical manipulation or open reduction would not be treated. Physical examinations by a physician would not be conducted. Obstetrical care would not be provided. Medical, diagnostic or surgical services could not be performed by dentists or optometrists (presumably including opthamologists).
The staff would all be members of the Christian Science faith, the practitioners praying for and counseling the patients, and the nurses attending to the physical needs of patients unable to care for themselves, such as bathing, bandaging wounds, and helping them about. Functions typically associated with traditional nursing care, such as *709 taking temperatures, obtaining pulse rates and dispensing medication would not be performed. Essentially, the facility is intended as a place for rest, relaxation and contemplation, where the residents, all Christian Scientists, would study the tenets of their religion for the purpose of healing. It would be a “sanatorium” of spiritual healing; “sanatorium” is the word used by petitioner in its certificate of incorporation and in its by-laws.
But whereas these worthy and exalted purposes may make the facility a hospice, they do not make it a public hospital as the Board was constrained to define that term. Nor, by circularity of reason, does the spiritual foundation of the facility make it a church, any more than a boarding house operated according to the beliefs and discipline of a particular faith (see Diocese of Buffalo v Buczkowski, 112 Misc 2d 336, affd on other grounds 90 AD2d 994, supra), or a mikveh or ritual bath (see Sexton v Bates, 17 NJ Super 246, affd sub nom. Sexton v Essex County Ritualarium, 21 NJ Super 329; but see Matter of Mikveh of South Shore Congregation v Granito, 78 AD2d 855, where the zoning board itself made the finding that this was a religious use).
The constitutional protection afforded all religions and religious beliefs is not hindered by the law’s refusal to mandate zoning approval of every institution solely because it is sponsored or operated by a religious organization in accordance with its beliefs. Surely zoning ordinances would still govern hospitals established and operated by the Jehovah’s Witnesses or a Catholic order, even if the former’s hospital barred blood transfusions and the latter’s hospital prohibited permissive abortions. Such adherence to religious principles would not of itself transform healing institutions into religious ones and thereby require constitutional rights to override zoning ordinances.
It is the proposed use of the land, not the religious nature of the organization, which must control.
The second challenge asserted by petitioner is that the ordinance, as applied, is unconstitutional.
In dealing with zoning restrictions, New York adheres to the majority view that religious institutions, by their very nature, are beneficial to the public welfare (Matter of Holy Spirit Assn. v Rosenfeld, 91 AD2d 190, 197). Thus, it has *710 been held that churches “occupy a different status from mere commercial enterprises and, when the church enters the picture, different considerations apply.” (Matter of Diocese of Rochester v Planning Bd., 1 NY2d 508, 523, supra; see Jewish Reconstructionist Synagogue v Incorporated Vil. of Roslyn Harbor, 38 NY2d 283, 287-288, cert den 426 US 950; Matter of Westchester Reform Temple v Brown, 22 NY2d 488, 493.)
Accordingly, the general policy, as applied in this State, is that religious institutions are virtually immune from zoning restrictions. However, most of the cases have involved churches and synagogues as well as uses ancillary or accessory to the principal use of a structure as a place of worship. Judicial interpretation as to what constitutes a religious use has been very broad (see, generally, 1 Anderson, New York Zoning Law and Practice [2d ed], § 9.34; Ann., 11 ALR4th 1084). Thus, a day care center (Matter of Unitarian Universalist Church v Shorten, 63 Misc 2d 978), a center for drug problems (Slevin v Long Is. Jewish Med. Center, 66 Misc 2d 312) and a religious school which teaches secular subjects (Westbury Hebrew Congregation v Downer, 59 Misc 2d 387), have been included in religiously immune uses. Such broad interpretation reflects the policy articulated by the Court of Appeals in Matter of Community Synagogue v Bates (1 NY2d 445, 453, supra) that a church should not be limited to being merely a house of prayer as this would deprive it and the congregation of the opportunity of enlarging, perpetuating and strengthening itself.[2]
However, even in instances involving accessory uses, a disproportionate accessory use would still be barred (see Gallagher v Zoning Bd. of Adj., 32 Pa D & C 2d 669). And certainly uses ordinarily prohibited in a residential neighborhood, such as a slaughter house, could not invoke the First Amendment simply because the use is associated with deeply held religious beliefs.
Where, however, as here, the use is not of an ancillary or accessory nature, a narrower construction has been ap *711 plied. In Diocese of Buffalo v Buczkowski (112 Misc 2d 336, supra), for instance, the court ruled that a diocese’s plans to establish an intermediate care facility for the developmentally handicapped was a charitable rather than a religious use and thus not subject to First Amendment protection (112 Misc 2d, at pp 342-343; see, also, Matter of Independent Church v Board of Zoning Appeals, 81 AD2d 585; People v Kalayjian, 76 Misc 2d 1097; Holy Sepulchre Cemetery v Town of Greece, 191 Misc 241, affd 273 App Div 942).
Of course, where the use itself is found to be religious, the same exemption from zoning restrictions afforded churches and other places of worship is applicable (see Matter of Holy Spirit Assn. v Rosenfeld, 91 AD2d 190, supra [religious retreat and training center]; Matter of Diocese of Cent. N. Y. v Schwarzer, 23 Misc 2d 515 [a chapel-focused religious education center]).
From the facts presented, it does not appear that the care facility proposed by petitioner is a religious use. Admittedly, religious worship and study as well as contemplation and prayer are central to Christian Science beliefs on healing. Nevertheless, those endeavors are simply the means employed at the proposed facility to cure physical infirmities. It is the curing of physical ailments which is the purpose of the facility. The fact that religious study and prayer may be employed to achieve that purpose does not thereby convert the intended result, i.e., healing, into a religious one, even though the means used conform to the beliefs and discipline of the church.
Matter of Faith for Today v Murdock (11 AD2d 718, affd 9 NY2d 761), cited by petitioner, is not to the contrary. In that case a branch of the Seventh Day Adventist denomination was engaged in conducting televised religious services and operating a religious correspondence school. It acquired a building in a residential district and thereafter altered the building for use in carrying out its functions. Later the organization filed plans for further alteration, which was to include a dining room, kitchen, printing shop, storage room, chapel, bible classroom and private garage and parking area. The superintendent of buildings and then the board of standards and appeals each in turn *712 denied the application. Special Term dismissed the organization’s petition challenging the denials, holding that the activities contemplated were those of a “factory”, a use not permitted within the district. On appeal, the Second Department reversed, stating (p 719) that the applicable ordinance “does not prohibit [the organization] from carrying out its functions in its proposed manner”. The Court of Appeals affirmed, without opinion. Although at first glance this decision may appear to impose significant restraints upon a community’s ability to regulate land use when a religious organization is involved (see 1 Anderson, New York Zoning Law and Practice [2d ed], § 9.34, pp 470-471), the reversal by the Appellate Division did not involve constitutional considerations but, rather, was predicated upon the fact that the ordinance, by its language, permitted philanthropic and eleemosynary institutions which, of course, included the activity in question.
Petitioner’s attack on the constitutionality of the ordinance as applied must, therefore, fail. It should be pointed out, however, that if petitioner’s challenge had not been dismissed on this ground, it would have been necessary to dismiss it on a procedural ground not addressed by the parties.
A zoning board of appeals is without authority to waive or modify explicit conditions set forth in the town code (see Matter of Jewish Reconstructionist Synagogue v Levitan, 34 NY2d 827, 829; Matter of Holy Spirit Assn. v Rosenfeld, 91 AD2d 190, 195, supra; Matter of Independent Church v Board of Zoning Appeals, 81 AD2d 585, 586, supra), and lacks the power to even consider immunity from code provisions which may be derived from constitutional considerations (see Matter of Nassau Children’s House v Board of Zoning Appeals, 77 AD2d 898, 900). The essence of petitioner’s attack is the constitutionality of the ordinance itself rather than its application. The ordinance simply states that churches are among the permitted uses, provided certain setback and parking requirements are satisfied. The Board, controlled by the language of the ordinance, is without discretion to approve or disapprove except to the extent of determining whether the proposed facility constitutes a “church”. Having properly concluded *713 that the facility was not a church, the Board was left without power to grant petitioner’s application (unless, of course, the granting of a variance was warranted). Lacking such discretion, an article 78 proceeding is not the proper vehicle to test the denial of petitioner’s application (see Matter of Covenant Community Church v Town of Gates Zoning Bd. of Appeals, 111 Misc 2d 537, 539-540; see, also, Jewish Reconstructionist Synagogue v Incorporated Vil. of Roslyn Harbor, 38 NY2d 283, 286, supra).
Although an article 78 proceeding is generally the proper vehicle to determine whether a statute, ordinance or regulation has been applied in an unconstitutional manner, it is not the proper vehicle to test their constitutionality (see Matter of Kovarsky v Housing & Dev. Admin., 31 NY2d 184, 191-192; Matter of Holy Spirit Assn. v Rosenfeld, 91 AD2d 190, 195, supra).
Pursuant to CPLR 103, the court is empowered to convert this proceeding into a declaratory judgment action to allow the constitutional issue to be adjudicated, but such action would be improper and premature until the town had been made a party, which has not been done here (see Matter of Jewish Reconstructionist Synagogue v Levitan, 34 NY2d 827, 829, supra; Matter of Independent Church v Board of Zoning Appeals, 81 AD2d 585, 587, supra). Procedurally, therefore, the application must fail.
The final challenge asserted by petitioner is that the Board improperly denied the variance sought by petitioner as alternative relief.
Before a use variance may be granted on the ground of “unnecessary hardship” it must be. shown that “ ‘(1) the land in question cannot yield a reasonable return if used only for a purpose allowed in that zone; (2) that the plight of the owner is due to unique circumstances and not to the general conditions in the neighborhood which may reflect the unreasonableness of the zoning ordinance itself; and (3) that the use to be authorized by the variance will not alter the essential character of the locality’ ” (Matter of Village Bd. v Jarrold, 53 NY2d 254, 257, quoting Matter of Otto v Steinhilber, 282 NY 71, 76).
In its application for a variance, petitioner asserted that strict application of the zoning ordinance prohibiting peti *714 tioner’s proposed facility would result in hardship because the land was acquired for the purpose of constructing such a facility, and “[i]t was the understanding of the [petitioner] that the land could be used for this purpose and substantial investments have been made for architectural plans and site plans.”
In the petition it is alleged that prior to purchase, the petitioner was informed by “Town Officials” that the facility would be permitted on the land and, in reliance upon that representation, $85,000 was spent to acquire the property and over $12,000 spent for engineering and architectural fees: The petition also claims that the interpretation of the ordinance was changed because of pressure on the building inspector, Herbert Davis, by a member of the town board, Peter Chatell, who owns property adjoining the subject premises. Chatell did speak at the Board hearing in opposition to petitioner’s application, but failed to identify himself as a town official. An unsigned affidavit by Herbert Davis denies that he was contacted by Chatell and denies that he ever informed petitioner’s officers or employees that their proposed care facility would be permitted in the zone. Davis was not the building inspector in 1977 when petitioner acquired the property, but was working as a town engineering assistant at the time.
The fact that the Davis affidavit is unsigned is of little consequence. Even if the record contained evidence supporting the conclusory allegations in the petition, a landowner is not entitled to a nonconforming use simply because issuing authorities promised to issue a permit for such use (see Hewlett Developers v Frisina, 32 Misc 2d 910; see, also, 1 Anderson, New York Zoning Law and Regulations [2d ed], § 6.14, p 188).
The evidence offered at the Board meeting fails to satisfy the requirements for a use variance. There has been no showing that the land cannot yield a reasonable return if used for any purpose permitted in the zone (see Matter of Ballroom Prods, v Abrams, 86 AD2d 661, 662; see, generally, 2 Anderson, New York Zoning Law and Practice [2d ed], § 18.09). Petitioner’s argument that its hardship is unique because the property was acquired for the specific purpose of constructing this care facility and such purchase *715 was made only after petitioner was informed by town officials that such use would be permitted, must fail. Even if proven in the record, which it was not, such a claim would fail to satisfy the second element of the “unnecessary hardship” test. “ ‘It is not uniqueness of the plight of the owner, but uniqueness of the land causing the plight, which is the criterion’ ” (Matter of Fasani v Rappaport, 30 AD2d 588, 589, quoting Matter of Congregation Beth El v Crowley, 30 Misc 2d 90, 94; see, generally, 2 Anderson, New York Zoning Law and Practice [2d ed], § 18.21). The Board properly denied petitioner’s application for a use variance.

. “1. (a) Real property owned by a corporation or association organized or conducted exclusively for religious, charitable, hospital, educational, or moral or mental improvement of men, women or children purposes, or for two or more such purposes”.

. However, the court also cautioned that the religious aim of strengthening the congregation through fellowship “may not be permitted to be perverted into a justification for establishing a place of entertainment, such as a country club” (Matter of Community Synagogue v Bates, 1 NY2d 445, 453).