## CIRCUIT COURT OF FAIRFAX COUNTY

Christian Fellowship Church

v.

Zoning Appeals Board
of Fairfax County et al.

May 19, 1988

Case No. (Law) 80481

By JUDGE THOMAS J. MIDDLETON

The Christian Fellowship Church (Church) requested approval by the Board of Zoning Appeals (BZA) of a special use permit to allow the relocation of the Church from its present location on Leesburg Pike, immediately east of Colvin Run Road, to a 76.9 acre site north of Route 7 just east of Riva Ridge Road. The parcel of land is currently undeveloped and zoned R-1. The Church presently owns 29.3 acres of the land and proposes to place the Church facilities on that acreage. The Church has contracted to purchase the remaining 47.6 acres from Mark S. and Myrtle W. Crippen.

The Church is seeking a Group 3 special permit use in an R-1 District. Such a use must comply with the provisions of Fairfax County Code §§ 8-006 (General Standards) and 8-303 (Standards for All Group 3 Uses). The property is located in Community Planning Section UP3 of the Upper Potomac Planning District in Planning Area III.

Upon hearing the views of the members of the general public, the Staff Report, opinions of traffic experts, and presentation of counsel, the BZA passed a resolution denying the permit. The resolution contained the following findings of fact: (1) that the applicant is the owner of 29.3 acres. That the applicant is the contract purchaser of 47.6 acres; (2) that the present zoning is R-1; and

(3) that the area of the lot is 76.9 acres. The BZA also found, "That the applicant has not presented testimony indicating compliance with the general standards for Special Permit Uses and the additional standards for this use as contained in §§ 8-006 and 8-303 of the Zoning Ordinance." BZA Record p. 358. The resolution passed by a vote of four to two. The application was denied.

The Church then filed an appeal in Fairfax County Circuit Court asking for a review of the decision of the BZA. The Church claims that: (1) the BZA acted arbitrarily and capriciously because it made no findings of fact; (2) the BZA violated the Church's right to religious freedom; and (3) the BZA's conclusions are plainly wrong because the record does not support them.

The Court finds that the decision of the BZA is not contrary to law, not arbitrary and capricious, and not unconstitutional. The decision of the BZA is affirmed.

I. The Church's first contention is that the BZA acted arbitrarily and capriciously in denying the application because it made no findings of fact to support its decision. The Virginia Supreme Court has concluded "the General Assembly intended that the record transmitted on certiorari reflect the findings underlying the board's decision. If it does not, the parties cannot litigate, the circuit court cannot properly adjudicate, and this Court cannot properly review the issues on appeal." *Packer v. Hornsby*, 221 Va. 117, 121 (1980). The minutes of the pubic hearing indicate that the BZA specifically adopted the reasons stated by Mr. Hammack in the motion made by him to deny the application. Public Hearing Transcript July 14, 1987, p. 82; BZA Record p. 352. Although some of the statements made by him were mere conclusions, Mr. Hammack incorporated by reference sufficient portions of the record to provide a factual basis for the decision of the BZA; *i.e.*, the specific findings relating to General Standards 3, 4, and 7 were sufficient for this Court to affirm the decision of the BZA.

At the July 14, 1987, public hearing, Mr. Hammack stated that the application failed to satisfy General Standards 1, 2, 3, 4, and 7 of Zoning Ordinance 8-006: 60 feet. Staff Report p. 4; BZA Record p. 153. The staff then recommended a relocation of the proposed dwellings

deeper into the site in order to provide sufficient wooded buffers to screen the facility from existing and future residential development and from Route 7. Staff Report p. 6; BZA Record p. 155.

The staff concluded that "the proposed use will have the characteristics of higher land use activities (major institutional or commercial) which would have significant adverse impacts on a low density residential area." Staff Report p. 10; BZA Record p. 159.

This Court has concluded that the testimony and staff report were sufficient to support the finding of the BZA that this use could have an impact on the development of neighboring properties.

(D) *General Standard # 4* -- The proposed use shall be such that pedestrian and vehicular traffic associated with such use will not be hazardous or conflict with the existing and anticipated traffic in the neighborhood.

The Virginia Department of Transportation (VDOT) report and the County Staff Report served as the basis for Mr. Hammack's conclusions relating to vehicular traffic. The VDOT concluded that the application of the Church was unsatisfactory for the following reasons:

(1) *Traffic Generation* -- "The magnitude of traffic generation exceeds that which was anticipated in conjunction with the preparation of the adopted plan. The approval of more intense uses than those allowed in the Plan could set a precedent for other applications and contribute to a premature obsolescence of the plan." VDOT report p. 6; BZA Record p. 182. County staff incorporated the VDOT report and further determined that:

> development of the property under the existing zoning or under the Plan would result in a maximum number of vehicle trips per day of 760. Travel generated under the low end of the recommended Plan density range would be half that amount. Trip generation by the proposed use is estimated to be between 1,990 and 4,140 vehicle trips per day on Sunday, while the high end of this range being the more realistic estimate. Peak hourly trip generation as estimated by the applicant's engineer would be 660 vehicles

per hour on Sunday as compared with 38 to 76 if the property were developed residentially.

Staff Report p. 7; BZA Report p. 156.
Further, VDOT found that:

the magnitude of traffic generation exceeds that which could occur as a result of other allowable uses of the site, and sufficient measures to mitigate the impact of this greater traffic have not been provided with this application. The Zoning Ordinance requires that uses regulated under Special Exemption/Permit be allowed only if their traffic impacts will not be hazardous or conflict with existing and anticipated traffic in the neighborhood. Because of the failure to mitigate these traffic impacts, this application does not meet this standard. This intensity should not be approved unless the issues identified in subsequent sections are adequately addressed.

VDOT Report p. 6; BZA Record p. 182.
(2) *Future Transportation Improvements* - The VDOT found that the application failed to dedicate a sufficient right of way to accommodate an additional lane. VDOT Report p. 7; BZA Record p. 183. In addition, a temporary construction easement would be necessary to facilitate future construction if full road improvements were not made at the time of the site development. VDOT Report p. 7; BZA Record p. 183.
(3) *Site Access* -- The VDOT also determined that the:

absence of public streets, travel lanes, or service drive connections to adjacent properties would add unnecessary traffic and turning movements to the arterial street network. Access to the median break in front of this site must be provided for the adjacent parcel to the west in accordance with the provisions of Fairfax County ordinances that require service drives along all primary highways. Consolidation of

access is also necessary to fulfill the Adopted Plan recommendation of limited access status for Leesburg Pile.

VDOT Record p. 10; BZA record p. 186.

This Court reviewed those documents as part of the record on certiorari and has concluded that they were sufficient to support the finding of Mr. Hammack and the BZA.

(E) *General Standard # 7* -- Adequate utility, drainage, parking, loading, and other necessary facilities to serve the proposed use shall be provided. Parking and loading requirements shall be in accordance with the provisions of Article 11.

Mr. Hammack referred to the County Staff Report and the oral testimony when citing the problems of parking and stacking.

After receiving comments from the Fairfax County Police Department, the County Staff noted potential parking problems as a result of "stacking" (backup of traffic) on Leesburg Pike. The staff concluded that "the traffic which would be generated by the proposed development, nearly 700 vehicles in the peak hour, would have a significant impact on the flow of traffic on Route 7 and would generate conflicts on local streets in the vicinity of the site." Staff Report p. 8; BZA Record p. 157.

Finally, Mr. Richard Harrison, a VDOT Transportation Planning Engineer, testified at the public hearing concerning the possible transportation impact in the development of the site as proposed.

> We [VDOT] feel that the existing entrance . . . would create a deterioration in the level of service as it operates today. If -- when you review the topography that surrounds the church, the grade on the existing crossover and so forth, it is not ideal. By increasing the use, you compound that. Certainly, the church has rights for ingress and egress to Route 7 as anyone else has. We feel that along with some of those upgrading in uses that both we and the County should look at the impacts and look

at some means to reduce those impacts and those potential safety problems . . .

Public Hearing Transcript 7/14/87, p. 10; BZA Record p. 280.

For the reasons stated in General Standards 3, 4, and 7 of § 8-006 of the Zoning Ordinance, the Court finds that the record supports the decision of the BZA.

II. The Church contends that the BZA failed to consider the issue of religious freedom in denying the application. The Church asserts that the BZA must somehow discount legitimate factors such as intensity of use, vehicular traffic, parking, stacking, etc., because the proposed use of the property is for a church. Numerous state authorities are cited in support of the Church's proposition. *See, Jewish Reconstructionist Synagogue of North Shore v. Village of Roslyn Harbor*, 38 N.Y.2d 283, 342 N.E.2d 534 (1975); *Islamic Society of Westchester v. Foley*, 96 A.D.2d 536, 464 N.Y.S.2d 844 (1983); *Board of Zoning Appeals of Meridian Hills v. Schulte*, 172 N.W.2d 39 (Ind. 1961). The Supreme Court of Virginia has not ruled on the issue.

The First Amendment of the Constitution of the United States mandates that "Congress shall make no law respecting an establishment of Religion or prohibiting the free exercise thereof . . . ." These two separate clauses, establishment and free exercise, each present a separate framework for analysis of religious freedom issues. Although it does not appear that a challenge has been made involving the establishment clause, such a challenge would require that the criteria set forth in *Lemon v. Kurtzman*, 403 U.S. 602, 29 L. Ed. 2d 745, 91 S. Ct. 2105 (1971), be satisfied: (1) the law must have a secular purpose; (2) it must have a primary secular effect; and (3) it must not foster an excessive government entanglement with religion.

The Fairfax County Zoning Ordinance clearly has a secular purpose; *i.e.*, to promote the health, safety, and welfare of its citizens. Likewise, the Ordinance has a primary secular effect since the overall regulation of appropriate land use neither advances nor inhibits religion. Also, the Ordinance avoids any entanglement with religion by relating to zoning issues only.

In 1984, the Fourth Circuit affirmed an Eastern District of Virginia decision which granted summary judgment to the City of Alexandria against a church which challenged the revocation of its special use permit. The court found that zoning ordinances did not violate the establishment clause of the First Amendment because the permit conditions had a strictly secular purpose and the City had the authority to require such conditions. *First Assembly of God v. City of Alexandria*, 739 F.2d 942 (4th Cir. 1984).

The free exercise clause of the First Amendment provides certain protection for the practice of religion. It appears that the challenge of the Church is primarily based upon this clause. While the freedom to believe is absolute, the freedom to act upon those beliefs may be subject to the legitimate police power of the government to regulate secular activities, such as zoning, in a reasonable and non-discriminating manner. *Cantwell v. Connecticut*, 310 U.S. 296, 84 L. Ed. 1213, 60 S. Ct. 900 (1940). The U.S. Supreme Court has recently stated that, "[t]he free exercise clause does not require an exemption from a government program unless, at a minimum, inclusion in the program actually burdens the Claimant's freedom to exercise religious rights." *Tony & Susan Alamo Foundation v. Secretary of Labor*, 471 U.S. 290, 105 S. Ct. 1953, 85 L. Ed. 2d 278 (1985).

The County has not prevented the congregation from practicing its beliefs since the Church currently has an active house of worship, albeit smaller, near the proposed site. The BZA has simply decided that the development plan proposed by the Church does not comply with the Zoning Ordinance. The BZA has intimated in the record that construction of the church facilities may be amenable to approval if the Church would construct the proposed buildings on a site more centrally located on the 76.9 acres of land. The Church's current application has the buildings solely on one 29 acre corner of the property.

The First Amendment authorities do not support the Church's contention that it should be accorded special treatment simply because it is a Church. *Poulos v. New Hampshire*, 345 U.S. 395, 97 L. Ed. 1105, 73 S. Ct. 760, *reh. den.*, 345 U.S. 978, 97 L. Ed. 1392, 73 S. Ct. 1119 (1953); *see also* 74 A.L.R. 2d 377, 409, § 21. Obviously, the BZA knew that the use was for Church purposes even

though it did not consider the issue of religious freedom in its decision. The BZA based its decision solely on legitimate zoning issues.

For the reasons stated above, it is the opinion of the Court that there has not been a violation of the Church's religious freedom and that the County evaluated the permit application in a reasonable and non-discriminatory fashion.

III. The Church's argument that the record does not support the finding of the BZA is without merit. There is ample evidence in the staff report, oral testimony, and other supporting documentation that the conclusions of the BZA were based on reasonable and legitimate interests relating to intensity of use, vehicular traffic, parking, and impact on the development of neighboring properties.

A decision by a board of zoning appeals based upon correct principles of law is presumed valid and will not be disturbed on appeal unless plainly wrong or in violation of the purpose and intent of the zoning ordinance. *National Memorial Park v. Board of Zoning Appeals*, 232 Va. 89 (1986). Since the testimony is in conflict, weight to be accorded is a matter to be determined by the trier of fact and not to be disturbed unless it is against the manifest weight of the evidence. The decision of the board of Zoning Appeals denying the Church's application for a special use permit was not against the weight of the evidence.