*970 OPINION OF THE COURT
Daniel R. Palmieri, J.
The petition brought pursuant to article 78 of the Civil Practice Law and Rules to annul the June 24, 2015 determination (corrected decision issued July 23, 2015) of the respondent Board of Zoning Appeals for the Incorporated Village of Lawrence (BZA) is denied and the proceeding is dismissed.
Petitioner is an individual who owns property located at 207 Harborview South, in the Incorporated Village of Lawrence (Village). Respondent Bais Medrash of Harborview (Bais Medrash or Synagogue), a religious organization of the Orthodox Jewish faith, owns three contiguous lots located at 210, 214 and 218 Harborview South in the Village. In December 2005 the BZA had granted Bais Medrash permission to construct and operate a synagogue. This was subject to certain terms and conditions, and a declaration of restrictive covenants regarding the use of these lots was made by the Synagogue, dated November 23, 2009 in compliance with the BZA’s directives previously issued. The covenants prohibited vehicular traffic on Friday nights and Saturdays and, key here, precluded use of the premises on weekdays, except for certain Jewish holidays which fell during the week.
Some years later, Bais Medrash sought permission to raze an existing structure on one of the lots, merge that lot with the one containing the synagogue building, and construct a parking lot. It also sought a slight expansion of the building, and to have the restrictive covenant prohibiting operation during the week lifted.
After an administrative appeal by Bais Medrash from an initial denial by the Village’s Building Superintendent, and by decision dated June 24, 2015, the BZA granted Bais Medrash permission to expand the synagogue and to rescind the covenants precluding the use of the synagogue on weekdays, subject to certain conditions described below. This determination was made on findings of fact upon a public hearing and documentary submissions. The BZA heard from Bais Medrash’s counsel, who asserted that because of the restrictive covenant the congregation was unable to offer weekday religious services, and that the third of the current three lots had been purchased for the specific purpose of addressing the parking concerns that had been raised at the time the prior determinations had been made regarding use of the property. Bais *971 Medrash also sought permission to expand the synagogue building to accommodate the Torah Ark holding the Torah Scrolls, described by the BZA in its decision as a 3-foot-by-10-foot “bump out” of the building.
Although several residents spoke in favor of the application, others were opposed. They argued, by counsel, that there had been no change in material circumstances that would justify relief from the restrictive covenants, that it would result in additional and detrimental vehicular traffic and that the presence of a parking lot would adversely change the character of the neighborhood. They also argued that property owners to the north of the Bais Medrash premises would be adversely impacted by drainage from the applicant’s premises after construction of the parking lot.
After hearing argument and expert testimony and reviewing submissions from both the applicant and the opponents, the application was approved to the extent that a zoning variance was granted permitting expansion of the synagogue building. Citing a need to accommodate religious activity under New York law, and the limitations on the Synagogue’s ability to offer weekday services, important to Orthodox Jewish practices, but also declaring itself unpersuaded by either side’s argument regarding the effect on the surrounding neighborhood, it granted relief from the restrictive covenant precluding such weekday services for a one-year trial period, to be reevaluated after the year had passed.
The BZA did not grant a variance for construction of the parking lot, nor permission for on-street parking, but rather stated in its decision that Bais Medrash could reapply for such a variance after the trial period ended. The BZA also conditioned the relief it did grant on 12 enumerated prohibitions and restrictions on the use of the property, and the applicant’s petitioning the Village Board of Trustees for legislation which would prohibit parking on certain surrounding streets during the period of religious services and classes, except for spaces in front of the applicant’s premises. The one-year trial period was to begin on the date Bais Medrash petitioned the Village Board of Trustees for the legislation described, and expire automatically after the year passed unless renewed upon further application. This proceeding to annul the BZA’s determination ensued.
At the outset, the court notes that the petitioner has not sought to overturn so much of the BZA’s decision that granted *972 an area variance permitting the small expansion to the synagogue building itself. Nor has she argued against the BZA’s finding declaring itself lead agency under the New York State Environmental Quality Review Act for purposes of the application, and that upon review of the applicant’s full environmental assessment form and other evidence, had determined that its partial grant of the application will not have an adverse environmental impact. Accordingly, the court will not address those aspects of the BZA’s decision.
In her first cause of action the petitioner seeks to annul the January 24, 2015 decision grounded on her contention that limited use of the synagogue was the sine qua non of the BZA’s original 2005 decision to permit its operation within the surrounding and wholly residential neighborhood. Thus, because nothing had changed in the neighborhood, and that there had been no showing that Bais Medrash could not operate and serve the religious needs of its congregants during the permitted hours, the BZA’s decision to lift the restrictions without any finding of a material change was arbitrary and capricious. In her second cause of action the petitioner asserts that the BZA had the power to grant temporary and conditional permits of limited duration only when the issue was nonconforming uses and buildings in undeveloped regions, not the case here. She therefore claims that the grant of conditional and temporary relief to Bais Medrash (i.e., a trial period) was beyond the BZA’s authority, rendering the challenged determination arbitrary, capricious and affected by an error of law. The third cause of action also refers to the grant of temporary and conditional relief as arbitrary, capricious and affected by an error of law in that it is conditioned on action by another body, i.e., legislation by the Village Board of Trustees.
In its answer and objections in point of law, the BZA contends that it did have the authority to grant the challenged relief, and that its ruling was appropriate in view of the special status granted religious organizations and schools in the area of zoning regulation. Respondent Bais Medrash has joined in opposing the petition, and seeks no affirmative relief of its own. The court finds that the petitioner has failed to show standing to assert her claim of lack of authority, and that the decision itself was not arbitrary and/or capricious.
Initially, the court rejects the challenge to the BZA’s authority to issue the subject ruling.
The BZA granted certain relief from Village zoning requirements, which is to expire by its terms within a specified period, *973 and is not even to begin until a certain condition was met. It did not grant all the relief requested. Petitioner certainly has the right to challenge the change permitting weekday services, but not because that change will last only for a year and/or is conditioned on the application to the Village Board of Trustees. That limit and that condition adversely affected, and thus can be challenged only by, the applicant Synagogue. This is so because although the petitioner can claim she will be adversely affected by the substance of the relief granted—permission to use the synagogue during the week—she will have effectively prevailed in her opposition if Bais Medrash fails to meet the condition and the use never occurs. Further, she is not adversely affected by the termination of the relief after a year upon the fulfilment of that condition.
In short, she is not adversely affected either by the BZA’s establishment of a condition for the relief being granted, nor by so much of the ruling that even if the condition is met the relief will end in a year. It is well established that if a party is or may be adversely affected by an administrative ruling such a party has standing, but without it standing is lacking. (Matter of Sun-Brite Car Wash v Board of Zoning & Appeals of Town of N. Hempstead, 69 NY2d 406 [1987]; Matter of O’Brien v New York State Commr. of Educ., 112 AD3d 188 [3d Dept 2013]; Matter of McAllan v New York State Dept. of Health, 60 AD3d 464 [1st Dept 2009]; Matter of Heilweil v New York State Div. of Hous. & Community Renewal, 12 AD3d 300 [1st Dept 2004].) This distinguishes the present matter from Matter of SV Space Dev. Corp. v Town of Babylon Zoning Bd. of Appeals (256 AD2d 471 [2d Dept 1998]). In that case it was the applicant for a special use permit that challenged the expiration of the permit after two years.
Further, the Appellate Division noted that there was no statutory basis for the temporary duration of the permit, but here the Code of the Village of Lawrence (Code) at section 6-4 (B) authorizes the BZA “[t]o grant temporary and conditional permits of limited duration for nonconforming uses and buildings in undeveloped regions.” The BZA obviously interpreted this provision to read that such permits could be issued for both “nonconforming uses” and “buildings in undeveloped regions,” not just for “nonconforming uses and buildings” in “undeveloped regions” only. It is well settled that where an ordinance cannot by its terms comprehensively cover every circumstance to which that ordinance might apply, a municipal *974 board’s interpretation of that ordinance in a given case governs unless unreasonable or irrational. (See Matter of Frishman v Schmidt, 61 NY2d 823, 825 [1984]; Matter of La Russo v Neuringer, 105 AD3d 743 [2d Dept 2013]; Matter of Arceri v Town of Islip Zoning Bd. of Appeals, 16 AD3d 411, 412 [2d Dept 2005].) As the court cannot say that the BZA’s interpretation is unreasonable or irrational, it will not disturb this clearly implied interpretation of the Code.
The foregoing disposes of the second and third causes of action, as both are based on allegations that the conditions imposed on Bais Medrash and the imposition of a “trial period” are contrary to law and the BZA’s authority. These claims are dismissed.
It is also worth noting that as the BZA ruled that any further extension would have to be based on a fresh and public application, a de novo proceeding is required of Bais Medrash even if it meets the condition and the year then expires. Indeed, it is arguable that the petition is premature because on this record the court cannot tell if the condition for commencement of the “trial period” was met, thus triggering the variance in Bais Medrash’s favor that is the subject of this proceeding. However, as neither the BZA nor Bais Medrash has raised a ripeness argument, the court takes no action based on that potential factor.
Turning to the merits, the court finds that there is no basis for finding that the determination of the BZA was arbitrary and/or capricious, and the BZA’s determination therefore should not be overturned. A court’s role in reviewing a zoning board’s determination is a limited one, and should sustain the action taken if it is rational and has a basis in the record. (See Matter of Pecoraro v Board of Appeals of Town of Hempstead, 2 NY3d 608, 613 [2004]; Matter of Halperin v City of New Rochelle, 24 AD3d 768 [2d Dept 2005].) Here, the record indicates a full review before the public, consideration of documentary submissions, and a determination that reflected the balancing of competing interests under Village Law § 7-712-b (3) and Town Law § 267-b (3), with which the Village Law is consistent. (See Matter of Caspian Realty, Inc. v Zoning Bd. of Appeals of Town of Greenburgh, 68 AD3d 62, 72 [2d Dept 2009].)
The petitioner’s arguments addressed to the substance of the BZA’s action are without merit. There is no authority of which the court is aware that a zoning board must find a change in *975 circumstances from the time of an earlier contrary ruling before it can exercise its regulatory powers, and petitioner has provided none. Rather, the analysis of this present determination must be pursuant to the well-established law cited above. In that regard, there has been no showing that slavishly adhering to the prior restrictions would have met the balancing test required of the BZA, and indeed that would undermine the very purpose of that analysis.
Further, in this particular case the applicant was a religious organization, and New York courts have recognized that special treatment should be afforded schools and religious entities seeking to expand in residential areas, albeit subject to reasonable control by a local zoning authority. (Cornell Univ. v Bagnardi, 68 NY2d 583, 594-596 [1986]; Matter of Tabernacle of Victory Pentecostal Church v Weiss, 101 AD3d 738, 740 [2d Dept 2012]; Matter of Apostolic Holiness Church v Zoning Bd. of Appeals of Town of Babylon, 220 AD2d 740 [2d Dept 1995].) There was thus an added impetus on the part of the BZA to seek a compromise that would permit the use without unduly upending the character of the surrounding neighborhood. The court cannot say that its solution was irrational or unsupported by evidence in the record.
Indeed, the fact that the prior determination of the BZA prohibited opening the synagogue for weekday services, undisputedly of importance to Orthodox Jewish practitioners, raises the potential application of the federal Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA) (42 USC § 2000cc et seq.). Although RLUIPA was not discussed by the parties to this proceeding, it was raised at the hearing before the BZA, and the court therefore will address this relevant statute. It provides that “[n]o government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly” unless the government can demonstrate that the burden is in furtherance of a compelling governmental interest and is the least restrictive means of furthering that interest. (42 USC § 2000cc [a] [1].)
The statute applies, inter alia, to any case in which
“the substantial burden is imposed in the implementation of a land use regulation or system of land use regulations, under which a government makes, or has in place formal or informal procedures or practices that permit the government to *976 make, individualized assessments of the proposed uses for the property involved.” {Id. § 2000cc [a] [2] [C].)
Several New York courts thus have been faced with an alleged protection of a religious organization under the statute in the context of land use, including such matters as real property tax proceedings (Matter of Long Is. Community Fellowship v Assessor of Town of Islip, 95 AB3d 1128 [2d Dept 2012]), as well as zoning matters (Matter of Libolt v Town of Irondequoit Zoning Bd. of Appeals, 66 AD3d 1393 [4th Dept 2009]; Matter of Winston v Town of Bedford Zoning Bd. of Appeals, 14 Misc 3d 1235[A], 2007 NY Slip Op 50306[U] [Sup Ct, Westchester County 2007]).
In the present case the court finds that the federal statute applies, in that the existing restriction on weekday services is a “substantial burden” on “religious exercise” by a “religious assembly.” It thus considers whether the BZA has demonstrated that the Village of Lawrence, through its BZA, has a compelling governmental interest in regulating the proposed use, and whether the regulation/solution was the least restrictive means of furthering that interest. As noted above, Bais Medrash has not opposed the BZA’s determination, and indeed has submitted a brief opposing the petition which seeks to annul it.
The court therefore also finds that, for purposes of the instant proceeding and RLUIPA, the BZA ruling is the least restrictive means of furthering a compelling governmental interest, maintaining the integrity of an established residential neighborhood. Directing Bais Medrash to apply to the Village Board of Trustees for limited street parking, while allowing it to offer weekday services is thus compliant with the federal statute. Conversely, a flat refusal by the BZA that would have the effect of prohibiting the synagogue from offering those services would not be.
Accordingly, the determination of the BZA should be upheld. The petition to annul its determination is denied and the proceeding is dismissed.